In the Matter of WILLIAM A. EVANS, Petitioner, v NORMAN F. GALLMAN et al., Constituting the State Tax Commission, Respondents.

Third Department, July 2, 1975

*Offermann, Fallon, Mahoney & Cassano (Leo J. Fallon* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Michael F. Colligan* and *Ruth Kessler Toch* of counsel), for respondents.

LARKIN, J. This is a proceeding pursuant to CPLR article 78 to review a determination of the State Tax Commission which sustained motor fuel tax assessments imposed under article 12-A of the Tax Law.

As a distributor of motor fuel (Tax Law, § 282, subd 1), petitioner is subject to an excise tax upon motor fuel sold within the State (Tax Law, §§ 284, 284-a). Subdivision 5 of section 282 of the Tax Law defines a sale of motor fuel to include "the transfer of fuel by a distributor * * * into a receptacle from which fuel is supplied by him * * * to * * * other motor vehicles". Thus, a taxable sale of gasoline takes place when gasoline is placed in a retail storage tank, not when it is removed and sold at retail.

The respondent New York State Tax Commission has, in determining the number of gallons of motor fuel subject to tax, as a matter of policy, since the beginning of the administration of the motor fuel tax laws, allowed a 1% loss allowance for evaporation and spillage of gasoline from tanks used by registered distributors exclusively for bulk storage. Respondent does not recognize any retail losses. Petitioner claims that this policy is arbitrary and capricious and without commercial or scientific basis.

During the period involved in this proceeding, 1964 through 1967, petitioner was a bulk distributor of petroleum products in the western New York area with annual sales of from 12 to 15 million gallons of gasoline. Petitioner also sold fuel on a retail basis at a location known as the Pontiac Truck Stop. The assessments in issue resulted from the disallowance of claimed losses from evaporation and spillage from one 30,000-gallon tank, known as tank number 10, at the Pontiac Truck Stop.

Petitioner has presented no evidence to support his general allegation that the 1% loss allowance policy, including the distinctions between wholesale and retail or between indirect and direct trade, are arbitrary or unfounded.

It cannot be said that this policy is totally without reasonable basis (see *Matter of Fink v Cole,* 1 NY2d 48). As pointed out by respondent, the policy is based in part on long-term storage, with attendant loss through evaporation and temperature fluctuation which, because of faster inventory turnover, is not a significant factor in the retail trade. Nor has petitioner presented any proof of actual loss because of evaporation and spillage. Therefore, the only question to be decided is whether this record supports the refusal of the respondent to apply the 1% loss allowance to the gasoline stored by petitioner in tank number 10. There is no dispute that tank number 10 was connected by a line to retail pumps at the Pontiac Truck Stop.

There is also no question that fuel is also stored in this tank for wholesale distribution. A wide range of testimony exists, however, as to the percentages of the fuel stored in tank number 10 sold on a retail and wholesale basis respectively. Respondent's witness testified that 90% to 95% of the gasoline stored in tank number 10 was sold on a retail basis, whereas petitioner's witnesses testified that retail sales constituted a substantially smaller portion of the total sales from tank number 10. Significantly, petitioner's witness was unable to produce records concerning either retail sales or comparative sales in retail and bulk from tank number 10. We find that there was substantial evidence to support the determination of respondent that its 1% loss policy was not applicable to the fuel stored by petitioner in tank number 10 (see *Matter of Kopec v Buffalo Brake Beam-Acme Steel & Malleable Iron Works,* 304 NY 65).

Finally, it should be noted that respondent has offered to allow petitioner a 1% loss allowance for gasoline actually in

wholesale storage in tank number 10 upon the installation of a meter beyond the wholesale cutoff point to measure the amount of fuel actually going to the retail outlet.

The determination should be confirmed, and the petition dismissed, with costs.

HERLIHY, P. J., GREENBLOTT, MAIN and REYNOLDS, JJ., concur.

Determination confirmed, and petition dismissed, with costs.