In the Matter of CHARTAIR, INC., Petitioner, v STATE TAX COMMISSION, Respondent.

Third Department, November 30, 1978

APPEARANCES OF COUNSEL

*Michael J. Pichel (Connie Fern Miller* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Francis W. Dow* and *Ruth Kessler Toch* of counsel), for respondent.

## OPINION OF THE COURT

KANE, J.

Petitioner operates a fixed base air service and flight school at the Tompkins County Airport. Its services include the sale of airplanes, aviation gasoline and supplies, and an air taxi service. In the fall of 1969, respondent audited petitioner's operation for sales taxes remitted for the period August 1, 1965 through February 28, 1969. The audit resulted in a tax

deficiency and assessment which included penalties and interest. After protest and a hearing, downward adjustments were made by respondent and all penalties were canceled. While the resulting monetary deficiency is not substantial, the issues raised by petitioner in seeking review of the respondent's determination dated December 5, 1975 are of considerable significance.

Petitioner contends: (1) that the use of a three-month "test period" audit to determine sales tax liability over a period of 43 months when sufficient detailed records were available lacked a rational basis: (2) that the Federal gasoline tax should not be included in gross receipts for sales tax purposes when that tax is ultimately refunded to the user; (3) that a 3-cent per gallon payment to Tompkins County should not be included in gross receipts; (4) that petitioner is within the statutory definition of an "airline" and thus subject to a sales tax exemption; and (5) that petitioner's solo flight instruction to licensed pilots should not be characterized as taxable rentals.

■ Although there is statutory authority for the use of a "test period" to determine the amount of tax due when a filed return is incorrect or insufficient (Tax Law, § 1138, subd [a]), resort to this method of computing tax liability must be founded upon an insufficiency of record keeping which makes it virtually impossible to verify taxable sales receipts and conduct a complete audit (Matter of Grant Co. v Joseph, 2 NY2d 196; Matter of Meyer v State Tax Comm., 61 AD2d 223, mot for lv to app den 44 NY2d 645; Matter of Markowitz v State Tax Comm., 54 AD2d 1023, affd 44 NY2d 684). However, if records are available from which the exact amount of tax can be determined, the estimate procedures adopted by the respondent become arbitrary and capricious and lack a rational basis (see Matter of Babylon Milk & Cream Co. v Bragalini, 5 AD2d 712, affd 5 NY2d 736).

In this case petitioner kept extensive records of all transactions including canceled checks, tax returns, credit card records, and sales and purchase invoices in each area of operation. The only indication of incomplete records was testimony regarding petitioner's failure to segregate invoices according to whether solo flying instruction was given toward a license to fly or the upgrading of a license. This classification, in turn, would determine whether there was a rental of the aircraft or not and thus its taxability. Any tax liability based upon this

instruction was in dispute at the hearing, and if there were a gap in petitioner's record keeping, it was insubstantial. Moreover, computation of a tax due upon that one phase of petitioner's operation could be effectuated with little difficulty. Additionally, we would observe that the record reflects another and more pragmatic reason for the respondent's desire to use a "test period" in this case. As stated by the tax examiner at the hearing, a complete audit "would have been very time consuming, it would have been burdensome upon the taxpayer, it would have been a costly venture on the Department as well as the taxpayer." We are not aware of any authority that would support an economic feasibility test as the basis for determining when a "test period" may be utilized. The honest and conscientious taxpayer who maintains comprehensive records as required has a right to expect that they will be used in any audit to determine his ultimate tax liability.

■ Petitioner's argument that the Federal gasoline tax should not be included among taxable sales receipts when that Federal tax is fully refundable for non-highway use presents a more troublesome problem. The Federal gasoline tax of 4 cents per gallon and the liability therefor is imposed upon the producer or importer of the gasoline (Internal Revenue Code [of 1954] [US Code, tit 26, § 4081]). It is, in effect, a cost of production and is integrated into the retail cost of the product (see *Lash's Prods. Co. v United States,* 278 US 175). New York has followed this concept by including Federal excise taxes on alcohol as receipts for the purpose of imposing a city sales tax *(Hoffman v City of Syracuse,* 2 NY2d 484) and by including Federal gasoline taxes in gross receipts from sales and services for purposes of the New York City general business tax *(Matter of Pure Oil Co. v Joseph,* 296 NY 1039). Support for petitioner's argument to exclude Federal gasoline taxes from gross receipts may be found in reported cases (see *Matter of Gulf Oil Corp. v McGoldrick,* 256 App Div 207, 212, affd 281 NY 647, and authorities cited therein). However, the refundable nature of the tax is not determinative nor is the fact that the ultimate user bears the economic burden of the tax. In our view the controlling factor is that the liability for the tax imposed upon the producer is constant. There is no statutory liability on the consumer for payment of the tax (see *Martin Oil Serv. v Department of Revenue,* 49 Ill 2d 260). While the hybrid nature of the gasoline tax results in support for both

parties' contentions, the position adopted by the agency responsible for collecting the tax is, in our view, rational and should be upheld *(Matter of Howard v Wyman,* 28 NY2d 434).

Lastly, we reject petitioner's remaining arguments. The 3-cent per gallon charge imposed by the County of Tompkins cannot be a tax since the power to impose such a tax is vested exclusively in the State Legislature *(Gautier v Ditmar,* 204 NY 20). Accordingly, it was properly included in gross receipts. The decision of the respondent that petitioner was not an "airline" is not unreasonable or irrational. The lack of a regularly scheduled operation undoubtedly motivated this decision and we cannot interfere *(Matter of Howard v Wyman, supra).* Also, we find no reason to upset the respondent's determination that petitioner relinquished dominion and control over the airplanes used by licensed pilots during solo flights, thus making them taxable rentals.

The determination should be annulled, with costs; the petition should be granted, and the matter remitted to the State Tax Commission for further proceedings in accordance with this opinion.

MAHONEY, P. J., GREENBLOTT, STALEY, JR., and MAIN, JJ., concur.

Determination annulled, with costs; petition granted, and matter remitted to State Tax Commission for further proceedings in accordance with this opinion.