In the Matter of MOHAWK AIRLINES, INC., Petitioner, v JAMES H. TULLY, JR., et al., Constituting the Tax Commission of the State of New York, Respondents. (Proceeding No. 1.)

In the Matter of ALLEGHENY AIRLINES, INC., Petitioner, v JAMES H. TULLY, JR., et al., Constituting the Tax Commission of the State of New York, Respondents. (Proceeding No. 2.)

Third Department, June 26, 1980

## APPEARANCES OF COUNSEL

*Hancock, Estabrook, Ryan, Shove & Hust (Joseph H. Murphy* and *E. Parker Brown, II,* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Francis V. Dow, Shirley Adelson Siegel* and *Jeremiah Jochnowitz* of counsel), for respondents.

## OPINION OF THE COURT

GREENBLOTT, J.

 In our view, the determination must be annulled. Although the State Tax Commission may use a "test period" to determine the amount of tax due where the available records of a taxpayer provide an inadequate basis upon which to

conduct a complete audit (see *Matter of Meyer v State Tax Comm.,* 61 AD2d 223, mot for lv to app den 44 NY2d 645), where, as here, records are readily available from which the exact amount of tax due can be determined, "the estimate procedures adopted by [the State Tax Commission] become arbitrary and capricious and lack a rational basis" *(Matter of Chartair, Inc. v State Tax Comm.,* 65 AD2d 44, 46). Accordingly, the use of test periods to estimate petitioners' tax liability was improper to the extent that the total assessment contained such an estimate *(Matter of Names in the News v New York State Tax Comm.,* 75 AD2d 145). However, we note that a substantial portion of the assessment was based on an actual audit of petitioners' invoices, and we have no basis to question the validity of that portion thereof (contrast *Matter of Grant Co. v Joseph,* 2 NY2d 196, 206).

■ We pass, then, to a review of petitioners' remaining contentions so as to guide the Tax Commission in its decision upon remand. Petitioners claim an exemption from use taxes on charges for repair services performed outside this State on aircraft parts shipped out of the State for overhaul and later returned to New York. They interpret section 1110 (cl [D]) of the Tax Law as imposing a use tax not on "services" but on the use of "personal property" upon which repair services have been performed. Since, argue petitioners, the aircraft parts at issue were subject to the sales tax prior to their servicing outside the State, their subsequent use within the State is excluded from the use tax under the introductory portion of section 1110. We cannot agree.

Except to the extent that property or services have already been or will be subject to the sales tax, section 1110 (cl [D]), in pertinent part, imposes a use tax for the use within this State of personal property upon which any of the services described in section 1105 (subd [c], pars [2], [3]) have been performed. The services described in section 1105 (subd [c], par [3]) generally include installing, maintaining, servicing and repairing personal property not held for sale in the regular course of business, and the last sentence of section 1110 provides that the use tax is to be applied against the consideration given for the service.

Thus, it is clear that a use tax is imposed on the use of personal property upon which maintenance, services or repairs have been made, when no sales tax has been paid for the same, and that the use tax is applied against the charges for

the service. Section 1110 does not distinguish as to whether services have been performed within or without the State, and the section does not prohibit imposition of the use tax where the property has been subject to sales tax at the time of original acquisition. Moreover, the use of services which are subject to the use tax as defined in section 1131 (subd [4], par [c]), which, in our view, is applicable to all provisions of article 28 of the Tax Law, includes "all services rendered to a person within the state, whether or not such services are performed within the state, upon tangible personal property the use of which is subject to tax under section eleven hundred ten or will become subject to tax when such property is received by or comes into possession or control of such person within the state." We agree, therefore, with the State Tax Commission that there will be no use tax imposed only where the repair parts or services have been or will be subject to New York sales taxes, which is not the case here.

Petitioner Allegheny Airlines also contends that under subdivision (a) of section 1119 of the Tax Law, it is entitled to a refund or credit for any sales or use taxes due or paid on inventory items purchased in bulk, stored at its Utica facility and subsequently shipped to Pittsburgh. Starting in April of 1973, Allegheny began phasing out operations at Utica and commenced transferring parts to its Pittsburgh facility. On January 8, 1974, operations in Utica ceased and the balance of the parts stored there were shipped to Pittsburgh.

Subdivision (a) of section 1119 allows a refund or credit for sales or use tax: "(2) on the sale or use of tangible personal property purchased in bulk, or any portion thereof, which is stored and not used by the purchaser or user within this state if that property is subsequently reshipped by such purchaser or user to a point outside this state for use outside this state".

Allegheny argues that it proved by convincing evidence that the parts were purchased in bulk, stored in New York State and not used, and shipped outside the State for use outside the State. Mr. Hay, a witness for Allegheny, testified that an "extreme variety" of approximately 89,700 inventory parts were purchased in "bulk lots", and that by bulk items he meant "[i]tems purchased in units in excess of one". The Tax Commission concluded that Allegheny failed to present sufficient evidence to demonstrate its right to a credit pursuant to section 1119 (subd [a], par [2]). However, no explanation was provided for this conclusion, and upon remand, the com-

mission must specifically determine whether the inventory parts at issue were purchased in bulk within the meaning of subdivision (a) of section 1119. (Cf. State Administrative Procedure Act, § 307, subd 1.)

Petitioner Allegheny also contends that it is not liable for use taxes on inventory items purchased from out-of-State vendors and shipped directly by them to Pittsburgh. The aircraft parts at issue were originally ordered from vendors outside New York State for delivery to the Utica facility. Before the parts were shipped, however, the delivery orders were changed and the items were shipped from out-of-State suppliers directly to Pittsburgh. In support of its contention, Allegheny placed in evidence a copy of a letter to its vendors directing them to alter their shipping instructions and an affidavit of the individual charged with mailing the letter.

In its finding of fact, the State Tax Commission stated: "14. Applicant Allegheny contends that parts destined for New York and included in the Sales Tax Bureau's audit were never received in New York. A letter allegedly sent to suppliers which advised them to divert shipments of parts scheduled for delivery to Utica, New York, to a point outside the State, was offered in evidence."

■ Paragraph 14 is plainly not a finding of fact (see State Administrative Procedure Act, § 307, subd 1) and the commission never even resolved the issue in its decision. On remand, the question must be decided.

The determination should be annulled, without costs, and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.

MAHONEY, P. J., SWEENEY, KANE and CASEY, JJ., concur.

Determination annulled, without costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.