■ In the Matter of PETROLEUM SALES AND SERVICE, INC., Petitioner, v ROBERT W. BOUCHARD et al., Constituting the State Tax Commission, Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a motor fuel tax assessment imposed pursuant to article 12-A of the Tax Law. Petitioner is a licensed distributor of fuel oil to retail gasoline stations in western New York and also the operator of a single retail truck stop where it sells diesel motor fuel. It filed excise tax returns for its sales in both of these enterprises covering approximately two-year periods each within the years 1973 through 1975. The Department of Taxation and Finance's audit division conducted a field audit for the pertinent time periods, following which deficiencies were assessed in the sums of $13,248.90 for the diesel fuel tax and $40,367.16 for the motor fuel tax. Petitioner filed for a redetermination with the Tax Commission and, after a hearing, the Tax Commission overruled the audit division regarding any additional diesel fuel tax due, but affirmed the deficiency assessed for the motor fuel tax. Petitioner then commenced the instant proceeding to review the latter determination, alleging that the Tax Commission erred in sustaining the imposition of an additional motor fuel tax based upon a discrepancy over the entire period of more than 300,000 gallons of gasoline between petitioner's purchases of fuel from refineries and what it reported as its sales. On its tax returns, petitioner had attributed the shortage to fuel lost through spillage, leakage, evaporation and contraction of volume. Pursuant to section 286 of the Tax Law, distributors of motor fuel, such as petitioner, are required, for the purpose of the tax imposed by article 12-A, to "keep a complete and accurate record of all purchases and sales or other dispositions [of motor fuel]". There is nothing irrational or unreasonable in the Tax Commission's determination which had the effect of imposing the burden on the taxpayer of establishing its compliance with this statutory requirement by showing that its records indicating losses of in excess of 300,000 gallons of motor fuel were in fact accurate. The only evidence on this issue presented by petitioner was the testimony of one of its officers that losses due to spillage, leakage, evaporation and contraction in volume can occur in the type of business conducted by petitioner. Notably absent, however, is any direct proof of specific leakage, spillage or other actual loss during the period at issue. Also absent is proof from a qualified expert establishing that such losses regularly

occur, and there is no evidence that the figures contained in petitioner's records fall within the range of anticipated loss for the particular activity (see *Matter of Allied N. Y. Servs. v Bragalini,* 4 AD2d 802). There is nothing irrational or unreasonable in the Tax Commission's determination which rejected petitioner's conclusory assertion that the discrepancy between purchases and sales must be attributed to losses, rather than some other taxable dispositions. That the Tax Commission has in the past accepted a 1% loss allowance for evaporation and spillage of gasoline from tanks used by distributors exclusively for bulk storage does not undermine the rationality of the determination herein. As this court held in *Matter of Evans v Gallman* (48 AD2d 466, mot for lv to app den 37 NY2d 712), there is a rational basis for the distinction drawn by the Tax Commission which results in the recognition of a loss allowance without actual proof of loss for gasoline stored in bulk, but not for gasoline involved in retail trade. Thus, in *Evans,* as here, the Tax Commission rejected a taxpayer's claim that it was entitled to a loss allowance for evaporation and spillage of gasoline involved in retail trade despite the absence of actual proof of such loss, and this court confirmed the determination. The same result should obtain here. Determination confirmed, and petition dismissed, without costs. Sweeney, Casey and Weiss, JJ., concur.

Mahoney, P. J., and Levine, J., dissent and vote to annul in the following memorandum by Levine, J. Levine, J. (dissenting). In our view, the majority's holding, which places the burden on the taxpayer to establish the accuracy of its records at the risk of having the Tax Commission estimate sales solely from purchases, is erroneous in that it places the cart before the horse. By statute and case law, the Tax Commission does not have open-ended discretion to disregard a taxpayer's records and then base its determination of taxable sales on alternative methods, such as purchases of a commodity which the taxpayer sells. Resort to alternate procedures is permissible only if the tax return is incorrect or insufficient (Tax Law, § 1138, subd [a], par [1]) or if the taxpayer's records are unavailable or incomplete and thus inadequate for a ready and fair determination of the actual tax due (*Matter of Surface Line Operators Fraternal Organization v Tully,* 85 AD2d 858; *Matter of Allied N. Y. Servs. v Tully,* 83 AD2d 727). In other words, the clear weight of authority required that, before the explanation for the discrepancy in purchases over sales (i.e., spillage, leakage, etc.) given by petitioner in its return could be ignored, the taxing authorities (and not petitioner) had the burden of showing that the records were incomplete or inaccurate. This explains why the Tax Commission did not seek to justify its determination on any finding that petitioner failed to demonstrate the accuracy of its records, which now is key to the majority's decision. Instead, the Tax Commission held that petitioner "offered no proof that the losses were caused in those ways, and not in other ways such as unaccounted-for sales, loss of tickets or errors in record-keeping". It also held that because the taxpayer has the burden of proving that sales are exempt, "it must be presumed that any unaccounted-for purchases must have been sold as taxable". Both of these holdings are demonstrably erroneous. First, the issue before the Tax Commission was not whether the sales of the 300,000 gallons were tax exempt, but instead whether a finding that such gallonage was actually sold could be made exclusively on the basis of petitioner's previous purchase thereof. Second, there was uncontradicted testimony from one of petitioner's officers generally describing how these losses occur from spillage, leakage, evaporation and contraction of volume during the process of transferring gasoline from refineries to petitioner's trailer tank trucks and then transporting and delivering it to customers' storage tanks. The tax auditor here conceded in his testimony that there are such losses due to these phenomena. Apart from the excess of purchases of gasoline over reported sales,

the only errors in petitioner's return found by the audit division related to unintended clerical omissions of some purchases and sales which were easily discovered from petitioner's records. These other errors clearly did not justify the Tax Commission's total reliance on purchases to ascertain the tax. Instead, the Tax Commission essentially relies here on the excess of purchases of fuel over reported sales both to show that petitioner's records were insufficient and also to provide the alternate method upon which to base the tax. However, the Tax Commission could not totally disregard the uncontested evidence attributing the shortage to spillage, leakage, evaporation or contraction of volume, particularly in view of its own established policy permitting an allowance of up to 1% of volume for such losses in the case of longer, bulk storage of motor fuel (see *Matter of Evans v Gallman,* 48 AD2d 466, mot for lv to app den 37 NY2d 712), and previous recognition of similar losses of up to one half of 1% of volume occasioned on the transfer and delivery of aviation fuel (see *Matter of Allied N. Y. Servs. v Bragalini* 4 AD2d 802). Here, the loss amounted to less than one quarter of 1% of the total volume of purchases. Thus, it is unquestionably true in the instant case that petitioner incurred *some* significant loss of fuel through spillage, leakage, evaporation and volume contraction. This being so, before totally resorting to previous purchases to fix the tax, the Tax Commission was required to find some other inadequacy in petitioner's records at least suggesting that the discrepancy may also have been attributable to "unreported sales, loss of tickets or errors in record-keeping". The evidence at the hearing established that the refineries metered and recorded all transfers from them to petitioner's trailer tank trucks, following which the trucks then made immediate direct delivery to petitioner's customers' station storage tanks. It was further established that the truck automatically metered the gallonage delivered and also automatically recorded, on consecutively numbered sales tickets, pre and postdelivery meter readings. The sales tickets also identified the particular customer, driver, truck and trailer involved in the delivery. Thus, the uncontradicted evidence showed that petitioner had a virtually air-tight method to account for the distribution of its gasoline from the point of acquisition at refineries to actual delivery to customers. This being so, it is quite apparent that an examination of the foregoing records of petitioner, together with its sales journals, reasonably could have been expected to disclose whether the loss may also have been due to unreported sales or missing tickets. Indeed, even a "spot check" of these records would have revealed such other discrepancies. It is also uncontested that the foregoing records were preserved by petitioner and made available to the auditor; however, he declined to examine them because they were "voluminous". The auditor's failure to examine these records to determine their adequacy either to confirm or refute petitioner's explanation for its losses places the instant case squarely under our previous decisions holding that a determination of tax due based upon various alternative methods of estimation, in disregard of apparently adequate taxpayer records, is arbitrary and capricious and lacks a rational basis (*Matter of Allied N. Y. Servs. v Tully,* 83 AD2d 727, 728-729, *supra; Matter of Chartair, Inc. v State Tax Comm.,* 65 AD2d 44, 46-47). Instead of properly putting the onus on the Tax Commission to examine the records and show their insufficiency for an accurate determination of the tax, the majority places the impossible burden on petitioner to trace the actual loss of the 300,000 gallons out of its multimillion-gallon purchases. Regarding the alternate suggestion of expert testimony on losses from spillage, leakage, evaporation, etc., in view of the uncontestable fact that significant losses could arise from such causes, the burden likewise should have been placed on the taxing authorities to show that such losses, totaling less than one quarter of 1% of the total volume of purchases, were abnormal. It should not have placed

the burden on the taxpayer to prove the reverse. For the foregoing reasons, the Tax Commission's determination herein should be annulled.