■ In the Matter of GUIDO HENNEKENS et al., Petitioners, v STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.—Weiss, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of respondent which sustained personal income and unincorporated business tax assessments against petitioners for 1971, 1972 and 1973.

Following a field audit, the Audit Division of the Department of Taxation and Finance determined that petitioners had understated their income on their personal income and unincorporated business tax returns for the years 1971, 1972 and 1973 and assessed deficiencies exclusive of penalties and interest, of approximately $15,730.[1] It appears that in an audit of the gasoline service station and auto repair business conducted by petitioner Guido Hennekens, the Department's auditors found that petitioners had no books or records for the year 1971, and that those books and records produced for the years 1972 and 1973 disclosed voluminous unidentified bank transfers between many bank accounts. For these reasons, and because the auditors were unable to obtain additional information and records from petitioners, a net worth audit was performed to determine if petitioners had understated their

---

1. The unincorporated business tax deficiencies are asserted solely against petitioner Guido Hennekens. His wife, petitioner Johanna Hennekens, was not involved in the operation of her husband's business.

taxable income.[2] The net worth audits indicated additional unreported income of approximately $100,000, upon which penalties and interest were added resulting in a total assessment of $27,765.41. Petitioners did not attend the hearing upon their petition for redetermination and offered no testimony, relying solely upon posthearing submissions of documents and records. Respondent, concluding that petitioners had failed to sustain their burden of proving that the assessments were incorrect and that the penalties for fraud should be eliminated because of the failure of the Department to sustain its burden of proof on that issue, otherwise sustained the deficiencies. This CPLR article 78 proceeding was commenced to challenge the determination.

In their brief, petitioners, for the first time, argue that the determination was arbitrary, capricious and unlawful because it was error to utilize the net worth analysis in performing the audit. It is well settled that a petitioner may not raise new issues in a CPLR article 78 proceeding that were not raised in the administrative hearing under review *(Matter of Higgins & McLaughlin v New York State Tax Commn.,* 109 AD2d 1029, 1031; *Matter of Manhattan Indus. v Tully,* 88 AD2d 737, 738). There was neither discussion at the hearing nor submission of post hearing documents on this issue. In any event, however, we believe that the use of a net worth analysis in the performance of an audit in this case was appropriate.

Petitioners maintain that a net worth analysis may only be utilized when the books and records are demonstrably incomplete. This argument rests on the doctrine that a taxpayer is entitled to rely on adequate records for the assessment of taxes and, in such cases, resort to estimation is arbitrary and capricious *(see, Matter of Chartair, Inc. v State Tax Commn.,* 65 AD2d 44, 46-47; *see also, Matter of Christ Cella, Inc. v State Tax Commn.,* 102 AD2d 352, 353-354; *Matter of Korba v New York State Tax Commn.,* 84 AD2d 655, 656; *Matter of Allied*

---

2. In a typical net worth prosecution, the government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish "an opening net worth" or net value of assets at the beginning of a year. It then proves increases in the taxpayer's net worth for the succeeding year(s) under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each year. Nondeductible expenditures are added to these increases and, if the resulting figure for any year is substantially greater than the taxable income reported for that year, the government claims that the excess represents unreported income *(see, Holland v United States,* 348 US 121, 125).

*N. Y. Servs. v Tully,* 83 AD2d 727, 728-729). Although these cases essentially flow from Tax Law § 1138 (sales and use taxes), petitioners contend that the principle applies here as well, particularly for the years 1972 and 1973 in which business records were available. We disagree.

The obvious distinction between this case and the *Chartair* line of cases is the type of tax being imposed. Those cases seek recovery under Tax Law § 1138 for sales and use taxes imposed directly upon verifiable receipts evidenced by books and records, which vendors are required by statute to maintain *(see, Matter of Licata v Chu,* 64 NY2d 873, 874), whereas, in the case at bar, the tax is imposed upon income, the receipt of which cannot easily be verified by reference to books and records. In other words, *Chartair (supra)* depends upon the existence of verifiable records, not here present. This court has recently upheld the use of net worth audits by the Department in personal income tax and unincorporated business tax cases where the taxpayer's income was not accurately reflected in his books and records *(Matter of Checho v State Tax Commn.,* 111 AD2d 470). Moreover, the United States Supreme Court has approved the use of net worth analysis in the prosecution of Federal income tax evasion cases as a recognized and respected method of determining a taxpayer's income *(Holland v United States,* 348 US 121, 131; *see also, United States v O'Connor,* 273 F2d 358, 361; *United States v Costello,* 221 F2d 668, 675, *affd* 350 US 359). Under the prevailing circumstances, where the business records for 1971 were unavailable and numerous unidentified bank transfers were made, we find the Department's use of a net worth audit entirely acceptable *(Matter of Checho v State Tax Commn., supra).*

Finally, we have examined the record and reject petitioners' contention that the determination was not supported by substantial evidence. We find, however, that respondent erred with reference to a $20,000 loan transaction from a friend in Belgium in that the offsetting liability was set at $18,000 instead of the full amount, which obviously resulted in an overstatement of $2,000 in income. Since petitioners failed to timely submit any evidence of other loan transactions that they claimed to be excludable, or to offer opposing evidence at the hearing, we find that they have failed to sustain their burden of proving that the Department was otherwise in error (Tax Law § 689 [e]).

Determination modified, without costs, by reducing petitioners' taxable income for the year 1973 from $61,708.57 to

$59,708.57; matter remitted to respondent for further proceedings not inconsistent herewith; and, as so modified, confirmed. Kane, J. P., Main, Weiss, Yesawich, Jr., and Harvey, JJ., concur.

