In the Matter of JONATHAN ALLEN, Petitioner, v COMMIS-
SIONER OF SOCIAL SERVICES OF THE STATE OF NEW YORK,
Respondent.

Third Department, March 20, 1986

36

### APPEARANCES OF COUNSEL

*O'Connell, Wolfe & Howley (J. Byron O'Connell* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Martin A. Hotvet* and *Peter H. Schiff* of counsel), for respondent.

### OPINION OF THE COURT

MAIN, J.

Petitioner, a physician, was a Medicaid provider in Clinton County during the period January 1978 through July 1981, the interval of time for which the Department of Social Services subsequently performed an audit of petitioner's Medicaid services. After it was determined by the Department that petitioner had submitted to it bills for 749 Medicaid patients during the audit period, it randomly selected 100 sample cases to review. Having selected these 100 cases, a Department employee visited petitioner's office and copied portions of the medical records for 97 of these sample cases.* The Department thereafter reviewed these copies and determined that, because he had engaged in unacceptable practices, petitioner should be permanently disqualified as a Medicaid provider. The Department also concluded that petitioner had received overpayment in the amount of $13,930.98 for the 97 sample

---

* Records for the other three selected sample cases were not available for copying by the Department, apparently because they were then in the possession of another governmental agency.

cases and, using extrapolation, that petitioner had been overpaid a total of $122,803.49 for all 749 cases.

Following a hearing conducted to review the Department's determination (see, 18 NYCRR 515.8-515.17), the Administrative Law Judge (ALJ) who presided over the hearing confirmed the initial determination that petitioner should be permanently disqualified as a Medicaid provider but altered the amount of overpayment to petitioner to $98,530.95 based on a finding of an overpayment of $13,155.24 for the sample cases. Petitioner then commenced this CPLR article 78 proceeding.

■ One of the major charges against petitioner was that he had failed to keep adequate medical records and was, therefore, guilty of engaging in an unacceptable practice. Petitioner's first argument is that the regulations defining "unacceptable practice" by physicians during the time in question were unconstitutionally vague. We disagree. During the first portion of the audit period, from January 1978 through August 1979, "unacceptable practice" was defined to include "conduct which * * * is inconsistent with [the State's Medicaid] program standards or regulations" (18 NYCRR former 515.1 [a] [as amended Aug. 31, 1976]). Such regulations required petitioner to maintain "such records as are necessary to disclose fully the extent of care, services and supplies provided to individuals under the New York State medicaid program" (18 NYCRR former 540.7 [a] [8] [as amended Aug. 2, 1977]). During the second portion of the audit period, from August 1979 through July 1981, the Department's regulation defining "unacceptable practice" specifically included the failure "to maintain such records as are necessary to fully disclose the extent of the care, services or supplies furnished" (18 NYCRR 515.2 [b] [11]). Thus, at all times in question, the Department's regulations offered "sufficiently concrete guidelines and standards" (Matter of Warder v Board of Regents, 53 NY2d 186, 198, cert denied 454 US 1125) to petitioner, who, in our view, has failed to carry his burden of proving that the regulations were not sufficiently definite (see, Matter of Campion Funeral Home v Axelrod, 99 AD2d 901, 902).

Petitioner next asserts that the method employed by the Department to determine the amount of payments to him that would be disallowed was arbitrary and capricious. After the hearing involving the 100 randomly selected cases chosen for review, the ALJ upheld disallowances of $13,155.24 for the sample cases. Dividing this sum by 100, he calculated that the

average disallowance per patient case was $131.55 and, after multiplying this figure by 749, concluded that petitioner should be disallowed a total of $98,530.95, plus interest, for all 749 cases.

■ This court has held, in the context of taxation cases, that sampling methods such as the one employed by the Department in this case were arbitrary and capricious where there were adequate records for the total audit period available for review (see, *Matter of Mohawk Airlines v Tully*, 75 AD2d 249; *Names in The News v New York State Tax Commn.*, 75 AD2d 145; *Matter of Chartair, Inc. v State Tax Commn.*, 65 AD2d 44). We perceive no reason to depart from such logic in the instant case. There is no contention that the records in any of the 749 cases involved in this audit are not readily available for review by the Department. The mere fact that those records are voluminous and that a review thereof would be time consuming for the Department does not, in our view, justify use of the sampling method (see, *Matter of Chartair, Inc. v State Tax Commn.*, supra, p 47). Accordingly, the ALJ's determination, insofar as it required petitioner to pay restitution of the amount disallowed, must be annulled and the matter must be remitted for further proceedings. Furthermore, having reviewed the record in this case, we find merit to certain of petitioner's arguments that a substantial evidentiary basis is lacking for portions of the ALJ's determination with respect to the 97 cases actually reviewed. Thus, upon remittal, the Department should not only examine for the first time those cases not heretofore inspected, but should also reexamine those 97 cases upon which the determination now under review is based.

We note, finally, that we have reached the foregoing conclusion fully aware that other courts have approved of the use of sampling methods, such as the one employed in this case, in the context of Medicaid cases (see, *e.g., Illinois Physicians Union v Miller*, 675 F2d 151; *Woldeyohannes v Webb*, 96 AD2d 493; *Matter of Sunset Taxi Co. v Blum*, 73 AD2d 691), but decline to accept the reasoning set forth in those decisions for the reasons aforementioned in this decision. In light of our holding in this case, we do not reach petitioner's argument that the monetary penalty imposed by the ALJ was disproportionate to the offenses charged. Moreover, because petitioner is now retired from the practice of medicine, any argument with respect to his disqualification as a Medicaid provider is now moot.

KANE, J. P., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Determination modified, with costs to petitioner, by annulling so much thereof as required petitioner to pay restitution in the amount of $98,530.95 and interest thereon; matter remitted to the Department of Social Services for further proceedings not inconsistent herewith; and, as so modified, confirmed.