■ In the Matter of CONTINENTAL ARMS CORPORATION, Petitioner, v STATE TAX COMMISSION et al., Respondents.—Harvey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Tax Commission which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

The issues in this proceeding are (1) whether petitioner's sale of firearms to foreigners is subject to the State's sales and use tax and (2) whether respondents properly used a "test period" audit to assess tax liability. In June 1983, the Audit Division of the Department of Taxation and Finance issued to petitioner a notice of determination and demand for payment of sales tax for the period June 1, 1979 through May 31, 1982. The assessment, which was calculated by using a test period audit, indicated that petitioner owed $56,977.59 plus interest. Petitioner sought a redetermination of the assessment asserting that delivery of the firearms did not take place within the State and, thus, that the sales in question were not subject to State sales tax. Petitioner further argued that the Audit Division was unjustified in using a test period audit because complete records had been kept for the audit period. Following a hearing, the application for redetermination was denied and the assessment sustained. This proceeding, transferred to this court pursuant to CPLR 7804 (g), followed.

The applicable law is not disputed by the parties. A State may impose a sales tax on transactions consummated within its borders (Harvester Co. v Department of Treasury, 322 US 340, 345-346). Thus, one who accepts delivery in this State is not exempt from sales tax merely because he came from outside of the State borders and planned to return there with the goods (id.). However, the imposition of a State sales tax on goods delivered outside the State's borders is unconstitutional (Evco v Jones, 409 US 91; Hostetter v Idlewild Liq. Corp., 377 US 324). In accordance with those general principles, respondent State Tax Commission has previously determined that goods which are sold to a foreign visitor but which are

delivered directly to his airplane as part of his luggage, so that he never has control of the goods until he reaches his foreign destination, are not taxable in this State *(see, Matter of M & B Appliances,* State Tax Commn., Apr. 25, 1984). Conversely, a transaction is taxable if the nonresident takes actual physical delivery at the airport, even if the delivery occurs at the furthest point allowed a passenger by security personnel and the customer proceeds to his out-of-State destination *(see, Matter of Jacques Francais Rare Violins,* State Tax Commn., Oct. 5, 1984).

In this proceeding, petitioner contends that its goods were placed in the foreigner's luggage at the airport *after* the luggage had left the control of the foreigner and, thus, the delivery did not occur in this State. The evidence in the record, however, does not support that contention. Indeed, petitioner's president, who had personally been involved in some of the arms deliveries, described the delivery of the weapons as follows: "[The foreigner] had to be at a certain point [for instance] at the information desk within that particular airline's office, and then we would go there, meet him shortly before the takeoff, before an hour. [The foreigner] would open his suitcase, put the thing in the suitcase. He would close it and then take it over to the weigh-in desk. He would put it on the weigh-in desk where it was weighed and put in the endless chain, the belt to go into the hold of the plane". From this testimony it is clear that the foreigner had control of the goods and that the actual delivery took place in this State. Accordingly, substantial evidence supports the Tax Commission's conclusion that "actual physical possession of the merchandise was transferred * * * in New York" and therefore the sales were subject to this State's sales tax.

Petitioner further contends that it was error for the Tax Commission to base its assessment for a three-year period upon a one-month "test period" audit. This court has repeatedly held that the use of a test period audit is arbitrary and capricious when adequate records are available for the total audit period *(see, e.g., Matter of Allied N. Y. Servs. v Tully,* 83 AD2d 727; *Matter of Hard Face Welding & Mach. Co. v State Tax Commn.,* 81 AD2d 967; *Matter of Mohawk Airlines v Tully,* 75 AD2d 249; *cf., Matter of Allen v Commissioner of Social Servs. of State of N. Y.,* 116 AD2d 35, 38). The Tax Commission's decision expressly recognizes that petitioner maintained "complete and adequate" records during the audit period. Respondents assert, however, that because petitioner's accountant failed to cooperate in the audit, the use of a test

period audit was justified. Respondents' factual determination that petitioner's accountant failed to cooperate is supported by substantial evidence in the record and we are accordingly required to accept that finding. But, accepting the finding that petitioner's accountant was uncooperative, there is no reason why respondents could not have used their subpoena power to obtain the necessary records (see, Tax Law § 1143; cf., Matter of National Freelancers v State Tax Commn., 126 AD2d 218, 220-221). By doing so, respondents would have been able to accurately assess tax liability. The use of a test period audit is not to be used as a sanction against a taxpayer who fails to cooperate. Accordingly, we conclude that the use of a test period to estimate petitioner's tax was improper.

Determination annulled, without costs, and matter remitted to respondent State Tax Commission for further proceedings not inconsistent herewith. Main, Mikoll and Harvey, JJ., concur.

Kane, J. P., and Casey, J., dissent and vote to confirm in a memorandum by Kane, J. P. Kane, J. P. (dissenting). We agree with the majority's conclusions with respect to the substantive issues and in particular with its conclusion that substantial evidence supports respondents' determination that petitioner's accountant failed to cooperate and provide access to petitioner's books and records. However, we disagree with that portion of the majority's decision finding that respondents' determination must be annulled since respondents did not use their subpoena power to obtain access to petitioner's records.

Under the circumstances presented here, we are unable to conclude that respondents' actions were arbitrary and capricious. The test period audit was conducted to determine whether a detailed audit was necessary and when petitioner's accountant disagreed with the results of the test period audit, he denied the Audit Division further access to petitioner's books and records. This court has previously determined that when the taxpayer's records are "unavailable" or "not provided", that: "it is [the State Tax Commission's] duty to select a method reasonably calculated to reflect the taxes due * * *. The burden then rests upon the taxpayer to demonstrate by clear and convincing evidence that the method of audit or the amount of the tax assessed was erroneous" (Matter of Surface Line Operators Fraternal Org. v Tully, 85 AD2d 858, 859 [citations omitted]).

Here, petitioner may have had complete records; however, it refused the auditor access to these records in order to allow

her to complete a detailed audit for the period in question *(see,* Tax Law § 1135 [d]). Accordingly, respondents properly relied on a test period audit *(see, Matter of Surface Line Operators Fraternal Org. v Tully, supra).* After the assessment was issued, petitioner had every opportunity to come forth with its detailed records to demonstrate that the amount of the tax assessed was erroneous *(see,* Tax Law § 1138). Petitioner, for some inexplicable reason, declined to avail itself of this opportunity at the administrative level. Since petitioner refused to allow the auditor access to its records even though given every opportunity to cooperate and/or to produce its records, we are unable to find that respondents acted arbitrarily by not taking on the added duty of attempting to subpoena petitioner's records. Moreover, if petitioner had detailed records which refute the results obtained by the test period audit, it could have presented them upon administrative appeal. Having failed to do so, it can hardly be heard to complain that respondents arbitrarily relied on a test period audit. We would accordingly confirm the Tax Commission's determination.