■ In the Matter of JOSEPH V. GIULIANO et al., Petitioners, v RODERICK G. W. CHU et al., Constituting the New York State Tax Commission, Respondents.—Mikoll, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of the State Tax Commission which partially sustained assessments of personal income tax, unincorporated business tax and sales and use tax against petitioners.

During the taxable years in question, petitioner Joseph V. Giuliano (hereinafter Giuliano) and his partner, Vincent D'Acri, owned and operated petitioner Commons Deli, later renamed International Superette, a delicatessen and grocery store in The Bronx. The personal records of Giuliano and his wife, petitioner Joann Giuliano, were audited for the years 1977 through 1979 by the Audit Division of the Department of Taxation and Finance. The auditor who conducted the examination of the Giulianos' records found that the funds they were drawing from their business account for personal use did not appear sufficient to meet their living expenses. Since, at the same time, large unexplained deposits were made in their personal checking account, the auditor apparently concluded that an indirect "cash availability" analysis* should be made. The audit revealed expenditures by the Giulianos that were significantly in excess of the amounts reported by them as wages, dividends and interest on their State income tax returns for all three years.

---

* The "cash availability" analysis is a method by which a taxpayer's reported income for a particular period is compared with his or her expenditures for the same period as revealed by canceled checks, bank withdrawals and any other relevant documents made available by the taxpayer. Any unexplained excesses of expenditures over income are treated as additional income to the taxpayer.

The Department treated the shortages as additional income realized by petitioners and International Superette for personal income, nonresident earnings and unincorporated business tax purposes, which formed the basis for notices of deficiency issued to petitioners. The Department also, in June 1980, commenced a separate examination of the books and records of International Superette for the purpose of verifying its taxable sales. Initially, the Department proposed an adjustment of $406.58 to International Superette's compensating use tax. However, a taxable ratio test and an on-site observation test of actual sandwich sales revealed additional sales tax due in the amount of $2,509.50. Petitioners paid the use tax assessment but, although they initially agreed to pay the added sales tax, they did not do so. Ultimately, results of the income tax audit were incorporated into the sales and use tax assessment issued to International Superette and a notice of deficiency was issued in the amount of $12,188.58, plus accrued interest. Petitions for redetermination of a deficiency or for a refund for the various tax assessments were thereafter filed. A consolidated hearing in these matters was conducted before an Administrative Law Judge.

Three auditors testified at the hearing on behalf of the Department as to the audit methods used and the results obtained. Giuliano testified on behalf of petitioners, giving his explanations as to the source of the unexplained large personal deposits. Giuliano stated that he had owned and sold two businesses, one in 1973 for $75,000 to $85,000 and one in 1975 or 1976 for $100,000, and he had given the proceeds to his wife to put in certificates of deposit. Giuliano also testified that he sold his home in 1979 for $55,000 and that, prior to 1977, he had funds available to him of between $280,000 and $350,000. However, he provided no verification for these claims; rather he stated that he gave the money to his wife who kept depositing the money in different banks to take advantage of varying interest rates and did not keep an accurate accounting of where the funds went.

After the hearing, the State Tax Commission issued its determination and concluded that the Department's auditing methods were proper and that petitioners had failed to meet their burden of proving error in the Department's procedure or findings. However, the assessments against petitioners were reduced to the extent that petitioners submitted additional documentation. As modified, the deficiencies were sustained. Petitioners subsequently brought this CPLR article 78 proceeding to challenge the Tax Commission's determination. The

proceeding was transferred to this court for disposition pursuant to CPLR 7804 (g).

The determination should be confirmed and the petition dismissed. We reject petitioners' first contention that the Tax Commission's use of an indirect auditing method, i.e., the "cash availability" analysis, to determine deficiencies in their personal income, nonresident earnings and unincorporated business taxes was improper. The use of indirect auditing methods by the Department in personal income tax and unincorporated business tax cases where the taxpayer's income was not accurately reflected in his books and records is proper (*Matter of Hennekens v State Tax Commn.*, 114 AD2d 599, 601; *Matter of Checho v State Tax Commn.*, 111 AD2d 470; *see, Holland v United States*, 348 US 121). We find no merit to petitioners' argument that an indirect auditing method may only be used when the books and records involved are demonstrably inadequate and that, since such a finding was not made as to their personal records, the Department should have only used these books and records in conducting the audit. An initial demonstration of inadequate or incomplete records before employing an indirect method is normally only required in sales and use tax cases where the tax is imposed directly upon verifiable receipts evidenced by statutorily required books and records (*see,* Tax Law § 1138; *Matter of Hennekens v State Tax Commn., supra,* at 601). Moreover, the taxpayer has the burden of overcoming a deficiency assessment by clear and convincing evidence showing that both the method used to arrive at the assessment and the assessment itself are erroneous (*see,* Tax Law § 689 [e]; *Matter of Guiragossian v Chu,* 130 AD2d 901; *Matter of Scarpulla v State Tax Commn.,* 120 AD2d 842, 843). This burden is a heavy one since courts regularly defer to determinations of the Tax Commission that have a rational basis (*see, Matter of Baird v New York State Tax Commn.,* 102 AD2d 958, 959).

In the instant case the Tax Commission's determination was rational since it was based on petitioners' failure to present any substantiating evidence other than Giuliano's own, rather nonspecific testimony (*see, Matter of Cardinale v Chu,* 111 AD2d 458, 459). Petitioners offered no proof at the hearing that a cash availability analysis was not a valid method of determining a tax deficiency or that the figures used by the auditor were inaccurate. Petitioners' records were unclear and susceptible to varying interpretations, permitting the inference to be drawn that the cash shortages found by the auditor

were income to the Giulianos derived from Commons Deli and International Superette *(see, Matter of Nicholls v State Tax Commn.,* 101 AD2d 950, 951).

We are unpersuaded by petitioners' additional contention that it was improper for the Department to use the cash availability analysis in computing the sales tax liability of International Superette. While it is true that, for purposes of ascertaining any sales and use taxes due, the Department may only resort to external indices where deficiencies in the taxpayer's record keeping render an item-by-item examination impossible (Tax Law § 1138 [a] [1]; *Matter of Grecian Sq. v New York State Tax Commn.,* 119 AD2d 948, 950; *Matter of Christ Cella, Inc. v State Tax Commn.,* 102 AD2d 352, 353), the Tax Commission was justified in utilizing the cash availability analysis in this instance. Here, the sales tax auditor characterized International Superette's books as "poor" and noted that sales invoices and purchase invoices, among other things, were unavailable. Petitioners also admitted an error in their use tax computations and agreed to pay additional sales taxes resulting from the auditor's use of a taxable ratio test and on-site observation test of sandwich sales. All these factors warranted the use of an indirect method by the Department. Moreover, petitioners' failure to present evidence that the auditor's method of assessing the tax was erroneous requires that the Tax Commission's determination be confirmed *(see, Matter of Guiragossian v Chu, supra).*

Determination confirmed, and petition dismissed, without costs. Kane, J. P., Casey, Weiss, Mikoll and Harvey, JJ., concur.

