■ In the Matter of METZIES SHOE BROOKLYN NEW YORK CORP., Petitioner, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the New York State Department of Social Services, dated November 6, 1986, which disqualified the petitioner as a Medicaid provider and required payment of restitution in the amount of $425,980.67 plus interest.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, without costs or disbursements.

The Department of Social Services (hereinafter the DSS) audited the petitioner's billings to Medicaid for the period of January 1, 1981 to December 31, 1983, by using a sample of 100 cases from a total of 5,388 cases for that period. The sampled cases led the DSS to conclude that the petitioner, a supplier of orthopedic medical supplies, was overpaid in the amount of $8,779.10 and by extrapolation, determined he was overpaid a total of $473,012 plus interest.

Contrary to the petitioner's arguments, the applicable regulations at the time of the audit period provided that the furnishing of prosthetic and orthotic appliances and devices was to be supported by a written prescription of a podiatrist, and the petitioner certified when claims were submitted for payment for supplies furnished to the clients that it would keep the necessary records for six years from the date of provision of services (see, 18 NYCRR 505.5 [b], [d] [1]; 540.7 [a] [8]). The fact that the manual defined the term "prescription" as used in the regulation, as a "fiscal order", permitting physicians to use either their prescription blanks or the "Medicaid Order/Prior Approval" forms, did not render the regulation vague, or require filing and publication of the manual (see, Executive Law § 102). As a result, the petitioner had sufficient notice that it was required to keep prescriptions for six years to support claims for reimbursement (cf., Matter of Camperlengo v Perales, 120 AD2d 883, 884, lv denied 68 NY2d 606; Matter of Allen v Commissioner of Social Servs., 116 AD2d 35, 37).

In addition, there is substantial evidence in the record to support the finding that the petitioner kept inadequate records. The disallowances were based upon the total absence of prescriptions or fiscal orders in support of the claims made, clearly falling within the definition of "unacceptable practice" (see, 18 NYCRR 515.2 [b] [6], [11], [12]). Nor do we find that the DSS or the Administrative Law Judge acted arbitrarily in refusing to credit the petitioner's fiscal order submissions at trial, more than one year after the audit period. Varying excuses were proffered for the absence of documents during the audit period, with allegations ranging from burglary the night before the commencement of the audit to the liability of the DSS for lost records. In addition, we note that the signatures on the order forms and the attached affidavits were different, or in inverse order, and in light of the spectre of falsification raised by the late submissions, we are unable to say that the Administrative Law Judge improperly precluded the evidence (see, Matter of Camperlengo v Perales, supra).

With respect to issues raised concerning the sampling technique or method used by the DSS, we note that extrapolations based upon a DSS audit using valid statistical sampling methods are presumptively accurate and the petitioner failed to show that the sampling was so palpably deficient on its face as to mandate exclusion or that the method used was invalid (see, 18 NYCRR 515.14 [b] [2], [3]; Matter of Sunset Taxi Co. v Blum, 73 AD2d 691, 692). Nor do we find that the penalty

imposed in this case is so disproportionate as to shock the conscience.

We have considered the remaining contentions and find them to be without merit. Bracken, J. P., Kunzeman, Eiber and Spatt, JJ., concur.