■ In the Matter of DENNIS ROGGEMANN, Petitioner, v MARY JO BANE, as Commissioner of the Department of Social Services of the State of New York, et al., Respondents. [614 NYS2d 593] —Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Social Services which, *inter alia,* excluded petitioner from participation in the Medicaid program for a period of two years.

Petitioner, a physician specializing in internal medicine, participated in the Medicaid program. Respondent Department of Social Services conducted an audit of services ordered by petitioner for the period June 6, 1988 to February 13, 1989, involving a sample of 100 provider-ordered services (numbered 101 through 200) valued at $1,788 paid to dispensing and service providers out of a universe of 27,365 claims. In January 1992, the Department notified petitioner that it was disallowing 11 of the sampled services, resulting in a projected disallowance of $77,413, and that it had determined to exclude him from the Medicaid program for two years based upon its finding that petitioner had ordered unnecessary and inappropriate prescriptions and tests and failed to fully document the need for the medications and services in his patients' charts, in violation of 18 NYCRR 515.2 (b) (1) (i) (c) and 515.2 (b) (6) and (11). Ultimately, following a hearing before an Administrative Law Judge (hereinafter ALJ), it was found that petitioner's charts did not support eight tests or prescriptions ordered, resulting in a disallowance of $68,190.84, which the Department was authorized to recover from petitioner. In addition, the ALJ upheld the penalty of exclusion from the Medicaid program for a period of two years. Petitioner then brought this CPLR article 78 proceeding to challenge the Department's determination.

Petitioner's primary contention is that there was not substantial evidence in the record to support the determination finding him guilty of committing an unacceptable practice. We disagree. As a threshold matter, we reject the contention that petitioner was found guilty of violating only 18 NYCRR 515.2 (b) (6) by "[f]ailing to maintain or to make available for purposes of audit or investigation records necessary to fully disclose the medical necessity for and the nature and extent of the medical care, services or supplies furnished, or to comply with other requirements of this Title" *(see, e.g., Matter of Koh v Perales,* 173 AD2d 477, *lv denied* 78 NY2d 859; *Matter of Metzies Shoe Brooklyn N. Y. Corp. v New York State Dept. of Social Servs.,* 151 AD2d 675). The central thrust of the ALJ's determination was that, in the absence of documentation to support the medical basis and specific need for the services ordered or prescribed by petitioner *(see,* 18 NYCRR 518.3 [b]), petitioner was guilty of causing claims to be submitted for "medical care, services or supplies provided at a frequency or in an amount not medically necessary", in violation of 18 NYCRR 515.2 (b) (1) (i) (c) *(cf., Matter of Herzog v Bane,* 195 AD2d 787, 788-789). Thus viewed, there is no question that, despite the existence of contrary evidence *(see, Matter of Berenhaus v Ward,* 70 NY2d 436, 443-444), the testimony of the Department's expert, Robert Matz, provided adequate evidentiary support for the ALJ's findings. A brief summary of Matz's testimony follows.

*Sample No. 121.* Matz testified that on September 23, 1988, petitioner ordered a rheumatoid autoimmune profile, including a deoxyribonucleic acid antibody (anti-DNA) test, used in the diagnosis of a group of rheumatoid or collagen vascular diseases. In this patient, the only charted indication of possible joint involvement was back pain which, in the absence of a physical examination confirming an actual or suspected rheumatoid condition, was insufficient to justify an anti-DNA test.

*Sample No. 169.* Matz testified that the notations in petitioner's chart, indicating that the patient complained of chest tightness and back pain, were insufficient to justify the thyroid stimulating hormone (TSH) test that petitioner ordered to rule out hypothyroidism.

*Sample No. 123.* On June 27, 1988, petitioner prescribed Elavil, a tricyclic antidepressant that Matz testified was usually used for "major depressive disorders". According to Matz, petitioner's ultimate diagnosis of "masked depression" was not recorded in the patient's chart at the time the drug was

prescribed and was not in any event supported by the recorded history and clinical findings stated therein.

*Sample Nos. 125, 151, 164 and 184.* All of these samples involved petitioner's prescription of H2 histamine receptor blockers, used in the treatment of peptic ulcer disease by decreasing the stomach acid level. In sample No. 125, Matz testified that there was not a sufficient recorded history or symptoms of ulcer disease to justify prescription of the drug Zantac. Although petitioner noted a past history of peptic ulcer disease and abdominal pain upon examination, Matz opined that a determination could not properly be made to give an H2 blocker in the absence of an indication as to when or how the prior diagnosis of peptic ulcer was made, whether the current abdominal pain is typical of this patient's ulcer symptoms, whether the patient had been previously administered an H2 blocker and, if so, how the symptoms responded. Matz testified that the same infirmities caused the disallowances of sample Nos. 151 and 164, also involving Zantac, and sample No. 184, involving Tagament.

*Sample No. 138.* Matz disallowed petitioner's prescription of Ceclor, a broad-spectrum antibiotic, for an intravenous drug abuser diagnosed as having a mitral valve prolapse with mitral regurgitation because no invasive procedure was contemplated and he found no documentation of active infection.

Petitioner's remaining contentions do not warrant extended discussion. The record does not support the contention that the decision to conduct an audit, the actual audit findings or the ALJ's subsequent determination were motivated by malice or affected by bias. Further, the ALJ did not deprive petitioner of constitutional due process in rejecting petitioner's challenge to the universe of claims, supported by nothing but conjecture that substantial numbers of the prescriptions and tests may not have been ordered by petitioner but were the result of fraud on the part of the pharmacy or testing laboratory. We note that petitioner made no competent offer of proof on the issues of malice and bias or to overcome the regulatory presumption as to the accuracy of the Department's computer-generated list of payments *(see,* 18 NYCRR 519.18 [f]). Similarly, petitioner's challenge to the validity of the Department's statistical sampling method was not supported by the required expert testimony *(see,* 18 NYCRR 519.18 [g]). As a final matter, although no doubt severe, we cannot say that the penalty imposed is " ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" ' " *(Matter of Pell v Board of Educ.,* 34

NY2d 222, 233, quoting *Matter of Stolz v Board of Regents,* 4 AD2d 361, 364; *see, Schaubman v Blum,* 49 NY2d 375, 380). Petitioner's remaining contentions have been considered and rejected.

Crew III, Weiss and Yesawich Jr., JJ., concur.

Mikoll, J. P. (dissenting). I respectfully dissent. Testimony before the Administrative Law Judge (hereinafter ALJ) disclosed that petitioner devotes his practice to patients in the lower socioeconomic strata of society whom he treats at three small clinics located in Harlem and the South Bronx. His patients include drug addicts and alcoholics. Petitioner has been in the Medicaid program since 1978. He was audited in July 1988 and reenrolled in the Medicaid program two weeks after the audit without disallowance. In 1990, however, respondent Department of Social Services audited petitioner's records for the period from June 1988 to February 1989, and this time alleged improprieties were found which gave rise to this CPLR article 78 proceeding.

The Department charged petitioner with unacceptable practices under 18 NYCRR 515.2 (b) (1) (i) (c), i.e., submitting claims for medical care, services or supplies which were not medically necessary, and with violating 18 NYCRR 515.2 (b) (6) and (11), i.e., furnishing or ordering medical care, services or supplies that were excessive or not medically indicated and by failing to document the need for these services and medications in his records.

As a result of the Department's review of 100 provider-ordered services, 11 charges of unacceptable practices were lodged against petitioner, three of which were dismissed. The ALJ found that petitioner had caused Medicaid overpayments totaling $249 as to eight patients, based on petitioner's failure to present sufficient documentation of the medical basis and need for the medications and tests prescribed by him for the patients.

Throughout the hearing before the ALJ, the testimony focused on whether petitioner's selected courses of treatment were supported by sound medical judgment and the existing diagnosis and entries in his patient charts, rather than whether petitioner had failed to properly maintain his patients' medical records. No evidence surfaced showing that petitioner's records were either missing, illegible or that they failed to record essential information such as a patient's complaint, history, physical condition or diagnosis. Rather, the dispute centered on whether the existing notations in petition-

er's records justified the particular medical services and/or medications ordered. No specific finding was made that the tests and prescriptions were *medically inappropriate*, but rather that the Department's expert would have treated the patients in question otherwise. The Department relied totally on the testimony of expert medical witness Robert Matz, who offered the only evidence at the hearing vis a vis accepted standards of recordkeeping. It was the Department's burden to establish the existence of the standards which petitioner is alleged to have violated *(see,* 18 NYCRR 519.18 [d]). Matz's testimony does not sustain the charge of inadequate record-keeping as a matter of law. Here there was no lack of basic data regarding each patient, which has been found to be essential in the relevant case law *(see, Matter of Koh v Perales,* 173 AD2d 477, *lv denied* 78 NY2d 859).

The gravamen of the Department's charge is that the services rendered were inappropriate and unnecessary. Although Matz was called to challenge petitioner's recordkeeping practices, the proceeding became a challenge to petitioner's medical judgment despite the fact that the validity of petitioner's choices of treatment in regard to these patients was not at issue. Petitioner was not found guilty of furnishing or ordering excessive services, as defined in 18 NYCRR 515.2 (b) (11), but of "unacceptable recordkeeping" as defined in 18 NYCRR 515.2 (b) (6). The question of medical necessity for a test (and, by logical extension, for a medication) is a question distinct from whether there are deficiencies in petitioner's recordkeeping *(see, Matter of Herzog v Bane,* 195 AD2d 787).

As a final note, I must comment on the shockingly severe penalty imposed here considering the benign nature of the alleged "unacceptable recordkeeping". A two-year suspension from the Medicaid program and a penalty of over $68,000, plus interest, in a matter wherein petitioner was found guilty of inadequate recordkeeping in eight cases with a loss of $249 in overpayments to Medicaid, where the conduct of petitioner was not fraught with an intent to defraud, where his patients suffered no adverse effects, and where petitioner's previous 12-year record is spotless *(compare, Matter of Clin Path v New York State Dept. of Social Servs.,* 193 AD2d 1034, 1036; *Matter of Inter-City Med. Labs. v Perales,* 186 AD2d 655), shocks the conscience. This matter should be remitted, in any event, for the imposition of a more appropriate sanction *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 233).

The determination should be annulled.

Adjudged that the determination is confirmed, without costs, and petition dismissed.