The Circuit Court of Barbour County modified a final sales and use tax assessment. The State, through able counsel, appeals the circuit court's action and we affirm.
There are two dispositive issues. The first is whether the taxpayer met his statutory burden of overcoming the prima facie
correctness of the final assessment. Secondly, we must decide whether the learned and distinguished trial judge erred in concluding that the taxpayer's business was located outside the city limits of the City of Eufaula but within the police jurisdiction of Eufaula.
The record reveals the following: The taxpayer was engaged in business as a nurseryman selling nursery products at retail and performing certain services for his customers. The department of revenue determined there was a deficiency in taxpayer's sales and use tax payments for the period July 1, 1973, to May 1, 1976. As a result, the State entered a preliminary assessment against the taxpayer for state and city sales and use taxes.
The taxpayer duly protested these assessments. The department of revenue denied the protest but did correct the preliminary assessments, entering final assessments in the amount of $2,626.58 for the state tax and $1,400.02 for the city tax. The city sales and use tax was computed on the assumption that the taxpayer's business was located within the city limits of Eufaula.
We note it is not disputed that, if the business was located outside the city limits, but within the police jurisdiction as found by the trial court, the percentage of taxation on the taxpayer's gross retail sales should have been halved.
The taxpayer then appealed to the Circuit Court of Barbour County pursuant to § 40-2-22, Code of Ala. 1975. After an oretenus hearing, the learned trial judge entered an order further reducing the amount of the assessments.
The evidence before the trial court included the testimony of the taxpayer's accountant and that of the taxpayer's son. The State countered with the testimony of its own accountant. For purposes of this appeal, suffice it to say that the testimony of the two accountants consisted of an explanation of the data they relied upon and the methods they employed in making their calculations in regards to what would be the correct assessment. Both parties also entered exhibits in support of their respective contentions.
The learned trial judge's order found, in pertinent part, that all subject retail sales by the taxpayer were made outside the city limits of Eufaula but within the police jurisdiction, that approximately 80% of the taxpayer's income was derived from tax exempt services rendered as opposed to taxable retail sales, and:
 (7) That the records as kept by the Appellant allowed a determination of what sales were and were not taxable, and the best method used by any of the parties in determining the amount of tax due was the method first used by Robert McCullar, a C.P.A. employed by the Appellant. Mr. McCullar went through every invoice, and every deposit, and categorized each between taxable and nontaxable sales and substantiated this by the records kept by the Appellant and records which were readily obtainable by the taxpayer from third parties, and, therefore, subject to scrutiny by the Department of Revenue. Using this method, Appellant owed $1,831.77 State tax and $260.11 City tax. Appellant has paid $1,500.00, and has offered to pay the balance of $591.88.
On appeal, the State first challenges the trial court's conclusion that the taxpayer had adequately proved the tax exempt nature of 80% of his income. The State argues that the taxpayer's admittedly inartfully kept books did not allow such a determination and concludes it was error to rely on what it characterizes as the verbal assertions of the taxpayer's accountant in ascertaining the amount of tax due. *Page 1091 
The State bottoms this argument upon § 40-23-9, Code of Ala. 1975, which provides:
 It shall be the duty of every person engaging or continuing in this state in any business for which a privilege tax is imposed by this division, to keep and preserve suitable records of the gross sales, gross proceeds of sales and gross receipts or gross receipts of sales of such business and such other books or accounts as may be necessary to determine the amount of tax for which he is liable, under the provisions of this division. It shall be the duty of every person to keep and preserve, for a period of three years, all invoices of goods, wares and merchandise purchased, for resale or otherwise, and all such books, invoices and other records shall be open for examination at any time, by the department of revenue or its duly authorized agent. Any person selling both at wholesale and retail shall keep his books so as to show separately the gross proceeds of wholesale sales and the gross proceeds of retail sales.
The State also refers us to Regulation A27-061 of the Alabama Department of Revenue, Sales and Use Tax Division, which was promulgated pursuant to the statutory authority invested in the Department by § 40-23-31. This regulation provides, in pertinent part:
 When a nurseryman sells shrubbery or other nursery stock and, as a part of the transaction, plants them in the land of the purchaser, the sales tax applies on the full price paid by the purchaser, including the cost of such planting. Provided, however, where such property is sold in a transaction separate and apart from an agreement to do the planting and where the sales price and a charge for planting are separated in the billing of the customer and in the records of the nurseryman, no sales tax will be required to be collected from the customer or paid to the State with respect of receipts from planting.
The State argues that the taxpayer failed to keep adequate books and records as required by § 40-23-9 and to properly separate in its billings charges for tax exempt services as required by Regulation A27-061. As a consequence, the State would have us hold the trial court in error for finding the taxpayer met its burden of overcoming the prima facie correctness of the final assessments entered by the Department. See, § 40-2-22. In support of this proposition, we are cited to the case of State v.T.R. Miller Mill Co., 272 Ala. 135, 140-141, 130 So.2d 185, 190
(1961), where our supreme court said:
 The State is not required to rely on verbal assertions of the taxpayer in determining the correctness of the tax return, but records should be available disclosing the business transacted. Where there are no proper entries on the records . ., the taxpayer must suffer the penalty of noncompliance and pay on the sales not so accurately recorded as exempt. (Citation omitted.)
While agreeing that the State should not be required to rely on mere "verbal assertions" in computing the sales and use tax due, we do not agree that this was all the taxpayer had to offer in the case at bar. Indeed, the trial judge found as a fact that the taxpayer's records were sufficient to allow a determination of what sales were taxable and that 80% of the taxpayer's income was derived from tax free services rendered.
The case law supports this approach when technically perfect books are not kept. In State v. Levey, 248 Ala. 656, 29 So.2d 129
(1946), the supreme court was also faced with inartfully kept records. The issue there was whether the taxpayer could support its claim that certain sales it had made were at wholesale as opposed to retail and therefore exempt from the sales tax. In those instances where the taxpayers' books were at least sufficient to constitute a "semblance of a record" of the exempt wholesale sales, the court upheld the trial court's decree which struck the State's assessment. 248 Ala. at 659, 29 So.2d at 132.
Again, in State v. Mims, 249 Ala. 217, 30 So.2d 673 (1947), while acknowledging the exacting nature of the statutory provisions *Page 1092 
as to sales tax records, the court refused to reverse the trial court's decision in favor of the taxpayer.
In so ruling, the supreme court explicitly refused to lay down any particular method of bookkeeping as required by the statute for fear that such a course might unduly burden the small businessman taxpayer. Noting the taxpayer in Mims did have records of his sales and invoices covering purchases, the court upheld the trial court's decision that the taxpayer had preserved a record within the requirements of the statute sufficient to allow a checkup of his business.
Based on the record before us, a similar conclusion was justified in the case at bar. The taxpayer's accountant was able to match deposit slips against invoices and to categorize sales as either exempt or nonexempt. A number of bids and billings prepared by the taxpayer in the ordinary course of business were also available. Using a "test period" in which adequate records were kept, the taxpayer's accountant was able to determine that 80% of the taxpayer's income was derived from tax exempt services. Although the time frame for this test period did not coincide with the years covered by the assessments, there was testimony that the taxpayer's business was substantially the same in both instances.
Thus, the learned trial judge was able to determine, not from mere "verbal assertions," but from competent evidence of a kind approved in Mims and Levey, which of the proffered methods of computation best reflected the amount of tax due. Viewing his conclusions with the presumption of correctness which attaches when an ore tenus hearing is held, we are not prepared to reverse this case on these grounds. State v. T.R. Miller Mill Co., supra.
As indicated, the trial court further concluded that the taxpayer's business was located within the police jurisdiction of the City of Eufaula but outside the city limits.
We note that the trial court took judicial knowledge of this fact. We further observe that the State does not dispute the correctness of this conclusion, but argues this was not a fact within the judge's judicial knowledge. Contending there was no competent evidence before the court to otherwise support this finding, the State again urges us to reverse the decree on the grounds the taxpayer failed to meet its burden of overcoming the State's prima facie case.
After a careful review of the record, we are convinced there was no error committed by the trial court in this respect. We so rule because, even if it is assumed the learned trial judge was incorrect in taking judicial notice of the location of the taxpayer's business, there was nevertheless sufficient evidence introduced to justify this conclusion.
This is so because a fact may be established by either direct or circumstantial evidence, and the proof is sufficient if, from the facts and circumstances adduced, it can be reasonably inferred. Armstrong v. State, 249 Ala. 40, 29 So.2d 330 (1947).
In Armstrong, the supreme court upheld the trial court's finding that a certain night club was located in Etowah County where the evidence was simply that both the defendant and the arresting law enforcement officers were from that county.
Here, the State's assessment was computed as if the taxpayer's business was located within the city limits. The taxpayer's accountant clearly and unequivocally let it be known that his calculations were based upon the lower police jurisdiction rate. The State failed to challenge the propriety of using this lower rate in any way.
We conclude that, based upon these facts and circumstances, which were at least as strong as those relied upon in Armstrong, it was reasonable to infer that the taxpayer's business was located outside the city limits.
The judgment is therefore due to be affirmed.
AFFIRMED.
BRADLEY, J., concurs.
WRIGHT, P.J., dissents. *Page 1093