MOORE, Judge.
In these consolidated appeals, 84 Lumber Company, Inc., appeals from a summary judgment entered by the Tuscaloosa Circuit Court in favor of the City of Northport, the Tuscaloosa County Special Tax Board, and the City of Tuscaloosa (hereinafter referred to collectively as "the taxing authorities") in five separate circuit-court actions. We dismiss appeal number 2150876 and appeal number 2150878. We also dismiss the City of Northport as a party to appeal number 2150879. We reverse the circuit court's judgment in appeal numbers 2150877, 2150879, and 2150880.
Procedural Background
Between 2008 and 2013, 84 Lumber filed five separate circuit-court actions, styled as appeals, from assessments of taxes, interest, and penalties entered by the taxing authorities. In the first action (case number CV-07-1122), 84 Lumber alleged that the City of Northport had improperly denied a petition for a full refund of sales taxes that 84 Lumber had erroneously remitted to the City of Northport and that the City of Northport owed interest on the refund amount it had paid to 84 Lumber more than 60 days after its petition had been filed. In the other four actions (case numbers CV-08-900078, CV-08-900285, CV-09-900384, and CV-13-900351), 84 Lumber maintained that the taxing authorities had entered a series of tax assessments against 84 Lumber based on an *569 improper "sampling" method by which the taxing authorities had audited three months of 84 Lumber's sales invoices and extrapolated from those months the sales taxes due for each assessment period. 84 Lumber further maintained that the taxing authorities had also improperly assessed interest and penalties against 84 Lumber in the same assessments.
The circuit court consolidated the actions for purposes of discovery. On August 26, 2015, the taxing authorities filed a joint motion for a summary judgment, along with evidentiary materials in support thereof. On October 29, 2015, 84 Lumber filed a response to the summary-judgment motion, along with evidentiary materials in support thereof. After a hearing, the circuit court entered a summary judgment on February 16, 2016, in favor of the taxing authorities. On March 16, 2016, 84 Lumber filed a postjudgment motion, which was denied by operation of law on June 14, 2016. See Rule 59.1, Ala. R. Civ. P. On July 7, 2016, 84 Lumber filed its notices of appeal to the Alabama Supreme Court; that court subsequently transferred the appeals to this court. See Ala. Code 1975, § 12-2-7. This court consolidated the appeals ex mero motu and held oral argument on March 14, 2017.
Factual Background
The parties presented the following evidence in support of, and in opposition to, the joint motion for a summary judgment. The taxing authorities have established a 5% sales tax on goods sold within Tuscaloosa County, which is divided among the county and municipalities within the county depending upon the point of delivery of the goods. If the goods are delivered to a customer within the corporate limits of either the City of Northport or the City of Tuscaloosa, the seller should remit a 2% sales tax to the appropriate municipality and a 3% sales tax to the Tuscaloosa County Special Tax Board, which collects taxes for the county. See Act No. 56, Local Acts 1953. If the goods are delivered within the police jurisdiction of the City of Northport or the City of Tuscaloosa but outside the city's limits, the seller should remit a 1% sales tax to the appropriate municipality and a 4% sales tax to the Tuscaloosa County Special Tax Board. If the goods are delivered outside any corporate limits and outside any municipal police jurisdiction, the seller should remit the entire 5% sales tax to the Tuscaloosa County Special Tax Board.[1]
84 Lumber operates a lumber store within the corporate limits of the City of Northport. 84 Lumber routinely delivers goods sold in its store to various job sites in Tuscaloosa County, some within the corporate limits or police jurisdictions of the City of Northport and the City of Tuscaloosa and some outside those areas. 84 Lumber records the delivery address on its sales invoices; however, the invoices do not identify the taxing jurisdiction and do not specifically state whether the delivery occurred within or outside the corporate limits or police jurisdictions of the City of Northport or the City of Tuscaloosa. 84 Lumber has historically remitted taxes to the taxing authorities based on the zip code ("the zip code method") of the delivery address.
The taxing authorities have audited 84 Lumber at least three times since the late 1990s. On each occasion, the taxing authorities discovered that, by using the zip code *570 method, 84 Lumber had remitted sales taxes to the incorrect taxing authority. The taxing authorities explained that their taxing jurisdictions do not correspond to zip code areas. The taxing authorities offered assistance to 84 Lumber to enable 84 Lumber to identify the correct taxing jurisdiction for each sale. 84 Lumber had attempted to correct the problem, but, during the periods at issue, it had not successfully implemented a system to assure that it remitted taxes to the correct taxing authority.
In regard to the sales-tax assessments at issue in the five civil actions before the circuit court, the taxing authorities determined the amounts due to each of the taxing authorities by a sampling method. The taxing authorities randomly selected three months out of each audit period, excluding winter months, reviewed the invoices for that sample period, determined the point of delivery for each sale within the sample period, ascertained the proper taxing jurisdiction, established the percentage of the sales applicable to each taxing jurisdiction, and extrapolated from that information the sales taxes owed to each taxing authority for the entire audit period. The audits generally indicated that 84 Lumber had paid the correct amount of sales taxes but that 84 Lumber had overpaid the City of Northport and had underpaid the City of Tuscaloosa and the Tuscaloosa County Special Tax Board. The City of Tuscaloosa and the Tuscaloosa County Special Tax Board assessed interest and penalties against 84 Lumber as a result of the claimed underpayments.
Discussion
I. Appeal Number 2150876
In the summary judgment, the circuit court determined that the City of Northport had properly limited its refund of sales taxes to 36 months, but the circuit court did not address 84 Lumber's claim that the City of Northport owed interest on the refund amount. The record shows that the City of Northport did not move for a summary judgment on that claim.
" '[I]t is well settled that this Court may consider, ex mero motu, whether a judgment or order is sufficiently final to support an appeal.' Natures Way Marine, LLC v. Dunhill Entities, LP, 63 So.3d 615, 618 (Ala. 2010).
" ' "Ordinarily, an appeal can be brought only from a final judgment. Ala. Code 1975, § 12-22-2. If a case involves multiple claims or multiple parties, an order is generally not final unless it disposes of all claims as to all parties. Rule 54(b), Ala. R. Civ. P. However, when an action contains more than one claim for relief, Rule 54(b) allows the court to direct the entry of a final judgment as to one or more of the claims, if it makes the express determination that there is no just reason for delay." '
" North Alabama Elec. Coop. v. New Hope Tel. Coop., 7 So.3d 342, 344-45 (Ala. 2008) (quoting Grantham v. Vanderzyl, 802 So.2d 1077, 1079-80 (Ala. 2001) )."
Patterson v. Jai Maatadee, Inc., 131 So.3d 607, 609 (Ala. 2013). The circuit court did not dispose of 84 Lumber's claim for interest, so it did not conclusively adjudicate all the claims in case number CV-07-1122, from which appeal number 2150876 arises. Therefore, we dismiss appeal number 2150876 because it does not lie from a final judgment.[2]
*571 II. Appeal Number 2150878
Appeal number 2150878 arises from 84 Lumber's appeal of a tax assessment entered by the City of Tuscaloosa in September 2007, designated as case number CV-08-900285. Although 84 Lumber alleged that the assessment was a final assessment, it is undisputed that the City of Tuscaloosa made only a preliminary assessment. Section 40-2A-7(b)(5)b.1., Ala. Code 1975, a part of the Alabama Taxpayers' Bill of Rights, Ala. Code 1975, §§ 40-2A-1 et seq., which applies to tax assessments and tax-collection efforts by local taxing authorities pursuant to the Local Tax Simplification Act of 1998, Act No. 98-192, Ala. Acts 1998, provides a taxpayer with the right to appeal only from a final assessment. Because 84 Lumber did not have a right to appeal the preliminary assessment, the circuit court did not acquire subject-matter jurisdiction over the appeal and its orders relating to that appeal, which included an order adding the City of Northport as a party to the appeal, are void. See generally Alabama Dep't of Revenue v. Morton, 892 So.2d 940 (Ala. Civ. App. 2004). A void judgment will not support an appeal, so we dismiss appeal number 2150878, albeit with instructions to the circuit court to vacate its orders in case number CV-08-900285. Id.
III. Appeal Numbers 2150877, 2150879, and 2150880
The remaining appeals arise out of the same summary judgment, which was also entered by the circuit court in case numbers CV-08-900078, CV-09-900384, and CV-13-900351, respectively. In that summary judgment, the circuit court determined in those three civil actions that the taxing authorities had properly used the sampling method to correctly assess the sales taxes due and had properly assessed interest and penalties against 84 Lumber for incorrectly remitting the sales taxes. 84 Lumber argues that the circuit court erred in both respects.
Before proceeding to discuss the merits of the appeals, we first dismiss the City of Northport as a party to appeal number 2150879. The City of Northport was never joined as a party in case number CV-09-900384 from which appeal number 2150879 arises, and 84 Lumber admits that the City of Northport was added as an appellee in appeal number 2150879 by mistake. We, therefore, grant the City of Northport's motion to dismiss appeal number 2150879 as to the City of Northport. See Rule 3, Ala. R. App. P. (indicating that only an adverse party in the proceedings below may be made an appellee).
Turning to the merits, we first address the contention that the taxing authorities could not use a sampling method to assess the sales taxes due. In the summary judgment, the circuit court found as follows:
"[T]he Court, finds that, as a matter of law, [84 Lumber] failed to meet its duty under the law to maintain adequate records to disclose the exact location of its deliveries. As a result, the Court further finds that [the taxing authorities] were entitled to use any reasonable method to determine the correct tax, and that the use of sampling is a reasonable method. See Wigley & Culp, Inc., v. Dept. of *572 Revenue, Docket No. Misc. 03-658 (Dept. Rev. Admin. Law Div., December 4, 2006). [84 Lumber] has failed to cite this Court to any authority holding to the contrary. Finally, [84 Lumber] had the opportunity to go through its records as the auditors did for all relevant periods, but neglected to do so. Doing so would have given an exact number rather than the sample to which [84 Lumber] objects. Failing that, the Court can find no legal error in [the taxing authorities'] methods."
We respectfully disagree with that analysis.
Section 40-2A-7, Ala. Code 1975, provides, in pertinent part:
"(a) Maintenance of records....
"(1) In addition to all other recordkeeping requirements otherwise set out in this title, taxpayers shall keep and maintain an accurate and complete set of records, books, and other information sufficient to allow the [taxing authority] to determine the correct amount of value or correct amount of any tax, license, permit, or fee administered by the [taxing authority], or other records or information as may be necessary for the proper administration of any matters under the jurisdiction of the [taxing authority]. The books, records, and other information shall be open and available for inspection by the [taxing authority] upon request at a reasonable time and location."
Section 40-2A-7(a)(1) requires a business subject to sales taxation to keep "accurate and complete" records of its business transactions so that the appropriate taxing authorities can determine the sales taxes owed. See State v. T.R. Miller Mill Co., 272 Ala. 135, 141, 130 So.2d 185, 190 (1961). Our supreme court has been reluctant to impose "any particular method of bookkeeping so as to unduly burden the taxpayer." See State v. Mims, 249 Ala. 217, 219, 30 So.2d 673, 674 (1947). Additionally, the Alabama Department of Revenue has not promulgated any regulations that specify the contents necessary to render business records "accurate and complete" for sales-tax purposes. See Ala. Admin. Code (Dep't of Revenue), Rules 810-14-1-.07 and 810-14-1.07.1.
In their motion for a summary judgment, the taxing authorities asserted that "a [Tuscaloosa County] business must keep a record of whether each delivery took place inside city limits, in a police jurisdiction, or in the county, outside any municipal limits." However, in the motion, the taxing authorities did not cite any statute or regulation requiring that information to be recorded by a taxpayer. The motion refers to the testimony of Barbara Hinton, an auditor for the City of Northport, but Hinton did not testify regarding the assertion made by the taxing authorities in its summary-judgment motion. In their briefs to this court, the taxing authorities have not identified any legal authority requiring 84 Lumber to include in its records within which taxing jurisdiction a particular delivery was made. Section 40-2A-7(a)(1) requires 84 Lumber only to maintain "accurate and complete" records from which that information can be gleaned.
Hinton testified that, in conducting the audits in order to make their assessments, the taxing authorities requested that 84 Lumber provide its tax returns, its invoices, and other documentation showing its gross revenue for the assessment periods. Hinton testified that the auditors had determined the sales attributable to each taxing jurisdiction by matching the delivery address on the invoices provided by 84 Lumber to maps and subdivision sheets outlining the jurisdiction of each taxing authority. According to Hinton, in questionable cases the auditors had gathered *573 additional information to ascertain the taxing jurisdiction. The auditors inputted that information into a spreadsheet, which ultimately produced the gross taxable sales made by 84 Lumber in each taxing jurisdiction during the audited months. According to Hinton, some of the invoices had been missing, but, she said, the auditors nevertheless had been able to compute the percentage of gross taxable sales for each taxing jurisdiction from the available invoices. Because the records supplied by 84 Lumber contained sufficient information from which the taxing authorities could determine the taxes due, 84 Lumber complied with § 40-2A-7(a)(1).
In State v. Mims, supra, the supreme court considered an appeal by the State from a judgment of the Chilton Circuit Court reducing an assessment by the Department of Revenue against a Clanton grocer who had used a "crude" record-keeping practice. 249 Ala. at 221, 30 So.2d at 676. After affirming the judgment, the supreme court noted that the Department of Revenue had accepted the grocer's tax remittances for years without objection despite the state of his records. In dicta, the supreme court stated: "Perhaps there should be required a more strict method of bookkeeping, but that is for the lawmaking body, or else the Department itself might give some notice to the taxpayer that he may be warned of the consequences if his bookkeeping method is inadequate." 249 Ala. at 221, 30 So.2d at 676.
The dicta in Mims does not support the position of the taxing authorities that 84 Lumber had failed to keep proper records of its sales. Although the taxing authorities had notified 84 Lumber that it was remitting taxes to the wrong jurisdiction, the record shows that the remittance errors stemmed not from inadequate record-keeping, but from the use of the zip code method instead of the more appropriate method of matching the delivery address on the invoices to the proper taxing jurisdiction. The problem perhaps could have been corrected if 84 Lumber had been required to ascertain and document the appropriate taxing jurisdiction on each invoice, but nothing in the law or the tax regulations requires such precise record-keeping.[3] Thus, we do not consider the fact that the taxing authorities had previously identified the remittance errors as proving that 84 Lumber maintained inadequate records.
Section 40-2A-7(b) provides, in pertinent part:
"(b) Procedures governing entry of preliminary and final assessments; appeals therefrom.
"(1) ....
"a. If the [taxing authority] determines that the amount of any tax as reported on a return is incorrect, or if no return is filed, or if the [taxing authority] is required to determine value, the [taxing authority] may calculate the correct tax or value based on the most accurate and complete information reasonably obtainable by the [taxing authority]. The [taxing authority] may thereafter enter a preliminary assessment for the correct tax or value, including any applicable penalty and interest."
(Emphasis added.) Section 40-2A-7(b)(1) a. requires a taxing authority that disputes the accuracy of a tax reported on a return to use the most accurate and complete information that it can procure without extraordinary effort in order to calculate the correct tax. In this case, it is undisputed that 84 Lumber maintained suitable *574 invoices documenting its sales that were readily available to the taxing authorities for inspection and auditing. Based on the plain language of § 40-2A-7(b)(1) a., the taxing authorities could have based their corrections on only those invoices, which represented the most accurate and complete information reasonably obtainable for the purpose of calculating the sales taxes due.[4]
In her deposition, Hinton testified that the auditors could have determined the taxes due most accurately by reviewing all the available invoices for the assessment periods. Hinton testified, however, that it could have taken up to a year to complete an audit of a 36-month period because of the volume of invoices. Hinton testified that the auditors had decided to use a random sample of three months out of each assessment period. Hinton testified that she could not recall how the auditors had selected the sample months other than that each of the three taxing authorities had randomly chosen a month within the pertinent assessment period. Hinton testified that an audit of 100% of the invoices during the entire assessment period would have produced the most accurate accounting of the taxes due and that she could not express in numbers the accuracy of the results of the sample methodology used by the taxing authorities to determine the taxes due from 84 Lumber.
We have found two cases in which an appellate court of this state has discussed sampling methods in relation to the assessment of taxes. In State v. Mims, supra, the Alabama Department of Revenue entered an assessment for the tax years 1939 through 1944 based on a review of only 13 months of documentation between 1939 and 1944. The Department concluded from its audit that the grocer had underpaid sales taxes by 44% during the audit period and applied that underpayment percentage to the remaining assessment period. The trial court heard evidence indicating that the grocer had not carried out the same amount of business throughout the entire five-year assessment period. The trial court determined that the sampling method used by the Department was too speculative. The supreme court agreed, holding that the grocer had maintained adequate records and that the 44% error found in the audited invoices could not be applied to the remaining assessment period without competent evidence indicating that, in fact, the same error had occurred during that period.
In State v. Ludlam, 384 So.2d 1089 (Ala. Civ. App. 1980), a nursery owner, who "inartfully" kept his books, contested an assessment of sales taxes made by the Alabama Department of Revenue by appealing to the Barbour Circuit Court. 384 So.2d at 1090. An accountant for the nursery owner testified that he had been able to determine the nature and amount of the sales from deposit slips and other documentation supplied by the nursery owner and third parties. The accountant used a "test period," in which adequate records had been kept, to determine that 80% of the sales were exempt. 384 So.2d at 1092. That test period did not coincide with the assessment period, but the evidence showed that the nursery owner had conducted his business in a substantially similar manner during both periods. On appeal, *575 the supreme court affirmed the judgment of the trial court, which had determined that the assessment was incorrect and that 80% of the nursery owner's sales should have been exempted.
Additionally, in Wigley & Culp, Inc. v. State Department of Revenue, Op. of Dep't of Revenue, Admin. Law Div., Docket No. Misc. 03-658 (December 4, 2006) (Final Order on Taxpayer's Application for Rehearing), the administrative-law judge concluded that the Department of Revenue can use a sampling method when a taxpayer fails to produce records covering the assessment period. The judge stated that "[t]he Department was also authorized to calculate the Taxpayer's Alabama liability in the absence of records using the best information available ...." (Emphasis added.)
Taken together, Mims, Ludlam, and Wigley & Culp suggest that sampling can be permitted when a business only minimally complies with record-keeping requirements or fails to comply altogether and the sample period substantially represents the typical course of business of the taxpayer during the assessment period. In this case, however, the record shows that 84 Lumber maintained invoices covering the entire assessment periods. Although some of those invoices may have been missing, the taxing authorities could have more accurately determined the taxes due by reviewing the remaining invoices in the same manner in which they had reviewed the invoices for the sample months. In these circumstances, the taxing authorities should not be allowed to resort to sampling. See, e.g., In re Mohawk Airlines, Inc. v. Tully, 75 A.D.2d 249, 250-51, 429 N.Y.S.2d 759, 760 (1980) ("Although the State Tax Commission may use a 'test period' to determine the amount of tax due where the available records of a taxpayer provide an inadequate basis upon which to conduct a complete audit ..., where ... records are readily available from which the exact amount of tax due can be determined, 'the estimate procedures adopted by [the State Tax Commission] become arbitrary and capricious and lack a rational basis.' " (quoting In re Chartair, Inc. v. State Tax Comm'n, 65 A.D.2d 44, 46, 411 N.Y.S.2d 41, 43 (1978) )).
The taxing authorities maintain that it would be too time consuming to audit each and every invoice to determine the proper allocation of the sales taxes. The taxing authorities argue that, in cases in which a taxpayer keeps voluminous records, as 84 Lumber does, the taxing authorities should be authorized to use a sample method. In § 40-2A-7(b)(1), the legislature explicitly provided that a taxing authority should calculate the correct taxes due from the most accurate and complete information readily obtainable. Despite common knowledge that large businesses undertake voluminous taxable transactions that produce vast amounts of documentation, our legislature has not provided an exception that allows taxing authorities to forgo using the most accurate and complete information readily obtainable to determine the taxes due in such circumstances. " 'A general rule of construction constantly invoked by courts is that, if no exceptions to the positive terms of a general statute are made, the conclusive presumption is that the legislature intended none, and the duty of the court is to interpret law not make law by engrafting exceptions upon statutes.' " City of Birmingham v. Weston, 233 Ala. 563, 567, 172 So. 643, 646 (1937) (quoting 6 McQuillin, Municipal Corporations § 2893). We do not have the power to establish the exception to § 40-2A-7(b)(1) advocated by the taxing authorities.
Section 40-2A-7(b)(5) c.3. provides that, on appeal to the circuit court, "the final *576 assessment shall be prima facie correct, and the burden of proof shall be on the taxpayer to prove the assessment is incorrect." We believe the legislature intended that a taxpayer can overcome the presumption of correctness of a final assessment by proving that the assessment entered by a taxing authority was not calculated based on accurate and complete information as required by § 40-2A-7(b)(1). In this case, 84 Lumber established that the taxing authorities did not calculate the assessments based on the most accurate and complete information available to them. Thus, 84 Lumber overcame the presumption of correctness sufficiently to withstand the motion for a summary judgment. See General Motors Corp. v. Kilgore, 853 So.2d 171, 173 (Ala. 2002) (setting out the standard by which a summary judgment is reviewed on appeal).
Based on the foregoing,[5] we conclude that the circuit court erred in entering the summary judgment as to the validity of the assessments entered by the taxing authorities. It follows that the summary judgment also was not proper with regard to the interest and penalties resulting from those assessments. Therefore, we reverse the trial court's summary judgment.
Conclusion
In conclusion, we dismiss appeal numbers 2150876 and 2150878. We dismiss the City of Northport as a party to appeal number 2150879. As to appeal numbers 2150877, 2150879, and 2150880, we reverse the summary judgment, and we remand the cases to the circuit court for further proceedings in accordance with this opinion.
2150876-APPEAL DISMISSED.
Thompson, P.J., and Pittman and Thomas, JJ., concur.
Thompson, P.J., dissents, with writing.
Donaldson, J., recuses himself.
2150877-REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman and Thomas, JJ., concur.
Donaldson, J., recuses himself.
2150878-APPEAL DISMISSED.
Thompson, P.J., and Pittman and Thomas, JJ., concur.
Donaldson, J., recuses himself.
2150879-APPEAL DISMISSED IN PART; REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman and Thomas, JJ., concur.
Thompson, P.J., concurs in part and dissents in part, with writing.
Donaldson, J., recuses himself.
2150880-REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman and Thomas, JJ., concur.
Thompson, P.J., dissents, with writing.
Donaldson, J., recuses himself.
THOMPSON, Presiding Judge, concurring in part and dissenting in part in appeal number 2150879 and dissenting in appeal number 2150877 and appeal number 2150880.
I concur with that part of the main opinion that dismisses appeal numbers 2150876 and 2150878 and that dismisses the City of Northport as a party to appeal number 2150879.
I dissent from the reversal of the trial court's summary judgment affirming the tax assessments. In State v. Mims, 249 Ala. 217, 30 So.2d 673 (1947), upon which the main opinion relies in part, in concluding that the taxpayer's crude bookkeeping methods were sufficient to support the trial court's judgment reducing an assessment in an appeal by the State arguing that the taxpayer should pay additional *577 taxes, our supreme court noted that "[p]erhaps there should be required a more strict method of bookkeeping, but that is for the lawmaking body, or else the Department [of Revenue] itself might give some notice to the taxpayer that he may be warned of the consequences if his bookkeeping method is inadequate." 249 Ala. at 221, 30 So.2d at 676. In this case, it is undisputed that the taxing authorities have audited 84 Lumber Company, Inc., on previous occasions and have notified 84 Lumber that its record-keeping methods were not adequate; it is also undisputed that the taxing authorities offered 84 Lumber assistance in creating records that would enable both the taxing authorities and 84 Lumber to properly calculate the amount of taxes owed to each taxing authority. However, 84 Lumber has persisted in maintaining its bookkeeping in a manner that makes it cumbersome to determine the appropriate tax liability owed to each taxing authority. For that reason, I agree with the trial court that 84 Lumber has not demonstrated that it kept accurate and complete records. See, e.g., State v. T.R. Miller Mill Co., 272 Ala. 135, 141, 130 So.2d 185, 190 (1961) ("Where there are no proper entries on the records to show the business done, the taxpayer must suffer the penalty of noncompliance and pay on the sales not so accurately recorded as exempt.").
"On appeal to the circuit court or to the Alabama Tax Tribunal, the final assessment shall be prima facie correct, and the burden of proof shall be on the taxpayer to prove the assessment is incorrect." § 40-2A-7(b)(5) c.3., Ala. Code 1975. See also Turner v. State Dep't of Revenue, 643 So.2d 568, 569 (Ala. 1994) ("Tax assessments appealed to the circuit court are deemed prima facie correct, § 40-2A-7(b)(5) ; State Dep't of Revenue v. Birmingham Realty Co., 255 Ala. 269, 50 So.2d 760 (1951), and the burden is on the taxpayer to go forth with evidence that the assessment is incorrect."). I do not believe 84 Lumber has met that burden; instead, it has shifted the burden of calculating the proper amount of taxes due, based on incomplete record-keeping, to the taxing authorities.

The parties did not provide this court with citations to all the laws and ordinances that establish the taxing system in Tuscaloosa County, but those laws and ordinances are Ala. Code 1975, § 40-23-1(a)(5), Act. No. 56, Local Acts 1953, Act No. 535, Local Acts 1994, City of Tuscaloosa Ordinance No. 7-40 et seq., and City of Northport Ordinance No. 66-67 et seq.

In Hanner v. Metro Bank & Protective Life Insurance Co., 952 So.2d 1056, 1061 (Ala. 2006), the supreme court held "that a trial court must certify a judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., before a judgment on fewer than all the claims in a consolidated action can be appealed." In this case, however, the circuit court did not consolidate the actions for trial purposes, but only for discovery purposes. See Ex parte Metropolitan Life Ins. Co., 707 So.2d 229 (Ala. 1997) (holding that Rule 42, Ala. R. Civ. P., authorizes a trial court to consolidate actions for discovery purposes only). We conclude that Hanner does not apply in this situation. Thus, we treat each appeal as arising from a separate civil action.

The record does not contain any evidence indicating that the taxing authorities had ever ordered 84 Lumber to include such information on its invoices.

In their summary-judgment motion, the taxing authorities asserted that, in case number CV-09-900384, the City of Tuscaloosa could not perform an audit because 84 Lumber had failed to produce requested records. However, as 84 Lumber points out, the taxing authorities failed to cite any evidence in support of that assertion, and 84 Lumber presented undisputed evidence indicating that the City of Tuscaloosa had performed an audit and that 84 Lumber had not refused to supply any records.

Based on our disposition, we pretermit discussion of 84 Lumber's remaining arguments as to the correctness of the assessments, the ruling of the circuit court on its motion to strike certain exhibits attached to the motion for a summary judgment, and the failure of the circuit court to hold a hearing on its postjudgment motion.