REL:  February 24, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

## CL-2022-0962

_____

## Opal Management, Inc.

## v.

## Alabama Department of Revenue

**Appeal from Montgomery Circuit Court**
**(CV-21-901011)**

MOORE, Judge.

Opal Management, Inc. ("the taxpayer"), appeals from a final judgment entered by the Montgomery Circuit Court ("the trial court") granting a summary judgment in favor of the Alabama Department of Revenue ("the Department").  We reverse the judgment and remand the case with instructions.

## Background and Procedural History

The taxpayer owns and operates a convenience store in Montgomery and is in the business of selling at retail tangible personal property. Pursuant to Ala. Code 1975, § 40-23-2(1), the gross sales from the sale of tangible personal property at retail are subject to a privilege or license tax, known as the sales tax. The taxpayer is required to add the sales tax to each item of tangible personal property that it sells, except those items that are not subject to the sales tax, and then collect the sales tax from the purchaser. Ala. Code 1975, § 40-23-26(a). The taxpayer is required then to report and remit to the state the sales taxes it collects. Ala. Code 1975, § 40-23-7.

The taxpayer has collected, reported, and remitted sales taxes to the state over the years of operating the convenience store. In 2018, the Department audited the taxpayer for the period July 1, 2012, to December 31, 2017. Based on the audit, the Department determined that the taxpayer had failed to keep complete and accurate records and information needed to allow the Department to determine the sales taxes that the taxpayer owed for that period, in violation of Ala. Code 1975, §

40-2A-7(a)(1) (providing, in pertinent part, that "taxpayers shall keep and maintain an accurate and complete set of records, books, and other information sufficient to allow the [taxing authority] to determine the correct amount of value or correct amount of any tax"). In accordance with Ala. Code 1975, § 40-2A-7(b)(1)a., the Department invoked its right to estimate the sales-tax liability of the taxpayer based on "the most accurate and complete information reasonably obtainable." Upon review of the information it deemed most reliable, the Department determined that the taxpayer had consistently, intentionally, and fraudulently underreported and underpaid its sales taxes. On April 3, 2019, the Department entered a final assessment against the taxpayer asserting that it owed $257,497.57, which included interest and a 50% penalty for fraud. See § 40-2A-11(d), Ala. Code 1975 (imposing 50% penalty "[i]f any part of any underpayment of tax required to be shown on a return is due to fraud").

The taxpayer properly and timely appealed the final assessment to the Alabama Tax Tribunal ("the Tax Tribunal"). See Ala. Code 1975, § 40-2A-7(b)(5). On August 18, 2021, the Tax Tribunal issued a

3

preliminary order in which it made certain findings of fact and conclusions of law, generally upholding the final assessment but ordering the Department to recalculate the sales-tax liability to correct a mathematical error. On August 21, 2021, the Tax Tribunal issued a final order that incorporated the preliminary order and accounted for the mathematical error; ultimately, the Tax Tribunal modified the amount owed under the final assessment to $257,188.10. In the final order, the Tax Tribunal resolved the two main disputes between the parties. First, the Tax Tribunal determined that the taxpayer had failed to maintain accurate and complete records from which the Department could ascertain its sales-tax liability and that the Department had properly estimated the sales-tax liability. Second, the Tax Tribunal determined that the Department had proven that the taxpayer had committed fraud in underreporting and underpaying its sales-tax liability, supporting the decision of the Department to impose the penalty for fraud. The Tax Tribunal also determined that the Department had correctly applied Ala. Code 1975, § 40-2A-7(b)(1)b., discussed infra.

4

On September 19, 2021, the taxpayer properly and timely appealed the Tax Tribunal's final order to the trial court. See Ala. Code 1975, § 40-2B-2(m). On October 21, 2021, the Department filed a motion for a summary judgment. On December 13, 2021, the taxpayer filed a written response to the summary-judgment motion. On December 29, 2021, the trial court conducted a hearing on the motion for a summary judgment. During the hearing, the trial court requested briefs from the parties regarding the standard of review to be applied to the final order of the Tax Tribunal, which both parties submitted by January 13, 2022. On July 26, 2022, the trial court entered a summary judgment upholding the final order of the Tax Tribunal. The taxpayer properly and timely appealed to this court on September 2, 2022. See Ala. Code 1975, § 12-3-10; Alabama Dep't of Revenue v. Scholastic Book Clubs, Inc., 276 So. 3d 698, 705 (Ala. Civ. App. 2018); and Rule 4(a)(1), Ala. R. App. P.

Issues

The dispositive issue in this case is whether the trial court erred in entering a summary judgment in favor of the Department and against the taxpayer.

5

## Standard of Review

An appellate court reviews a summary judgment de novo. S.J.S. v. B.R., 949 So. 2d 941, 944 (Ala. Civ. App. 2006). A summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. The burden is on the party moving for a summary judgment to make a prima facie showing that it is entitled to a summary judgment by presenting evidence that, if uncontroverted at trial, would entitle the moving party to a judgment as a matter of law. See Ex parte General Motors Corp., 769 So. 2d 903, 909 (Ala. 1999). If the movant makes a prima facie showing, the burden shifts to the nonmoving party to rebut that showing by presenting substantial evidence creating a genuine issue of material fact or proving that the movant is not entitled to a judgment as a matter of law. Bass v. SouthTrust Bank of Baldwin Cnty., 538 So. 2d 794, 797-98 (Ala. 1989).

Facts

The Department filed a narrative summary of undisputed facts that relied exclusively on the contents of the preliminary and final orders entered by the Tax Tribunal, which were attached as exhibits in support of its motion for a summary judgment. See Rule 56(c)(1), Ala. R. Civ. P. In those orders, the Tax Tribunal found that, when the Department had notified the taxpayer of its intent to perform a sales-tax audit, the Department had requested that the taxpayer provide sales records, cash-register tapes, purchase invoices, bank statements, and other records so that it could determine the proper amount of the sales-tax liability. During the audit, however, the Department discovered that the taxpayer had not retained the "z tapes," which had recorded each sales transaction that had been processed through its store's cash register.

Instead, Mohamed Hoque, the manager for the convenience store owned and operated by the taxpayer, informed the Department that he had used "z summaries" generated by the cash register to compute the sales-tax liability. Those summaries aggregated the individual sales for the month. According to Hoque, each month he would use the "z

7

summaries" to ascertain the amount of the total sales transacted through the cash register, subtract the nontaxable sales from that amount, and, after accounting for theft and spoilage, determine the gross monthly taxable sales and the sales-tax liability on that amount. Hoque would make all of those calculations on a monthly worksheet and would then forward the monthly worksheet to the taxpayer's accountant, who, he said, would then file the taxpayer's monthly sales-tax return, reporting and remitting the amount of the sales tax as determined by Hoque. The taxpayer provided the Department with the monthly worksheets and monthly sales-tax returns, which corresponded exactly, but not the "z summaries" or other raw data Hoque had used in his monthly calculations, all of which, Hoque said, had been discarded because of a lack of storage space.

The Department determined, and the Tax Tribunal agreed, that the taxpayer had not maintained proper records of its sales. To ascertain the sales-tax liability, the auditor decided to perform a "mark-up audit." In a markup audit, the Department determines the wholesale costs to the taxpayer of the goods sold and applies a markup percentage to estimate

the retail-sales amount of the goods sold. In this case, the auditor obtained information from the top eight wholesale vendors who supplied the taxpayer to estimate the total costs of the store's inventory during the audit period, which originally had been January 1, 2015, through December 31, 2017. After the summary-judgment hearing, the taxpayer submitted an affidavit from a third party and from Hoque designed to prove that the Department had used unreliable information from the wholesale vendors to ascertain the amount and value of the wholesale goods purchased by the taxpayer, and the Department submitted an affidavit from the same third party "to set the record straight"; the Tax Tribunal excluded those affidavits from consideration. Based on his review of the information obtained from the wholesale vendors, the auditor determined that the taxpayer had purchased inventory during the relevant audit period at a cost of $5.8 million.

After determining the wholesale cost of inventory, and accounting for theft, waste, and "tobacco buy downs," the auditor applied a 35% markup to the costs of the goods sold to conclude that the amount of the gross retail sales during the relevant audit period was approximately

$7.8 million. After subtracting nontaxable sales, the auditor calculated the dollar amount of the taxable sales for the initial audit period, concluding that the total far exceeded the $3.5 million that had been reported by the taxpayer.

Because the auditor believed that, for the initial audit period, the taxpayer had underreported its taxable sales by more than 25%, the audit period was extended back to July 2, 2012. See § 40-2A-7(b)(2)b. ("A preliminary assessment may be entered within six years from the due date of the return or six years from the date the return is filed with the department, whichever is later, if the taxpayer omits from the taxable base an amount properly includable therein which is in excess of 25 percent of the amount of the taxable base stated in the return."). Applying the same markup-audit methodology for the extended period, the Department determined, and the Tax Tribunal found, that, for each of the 66 months of the total audit period, the taxpayer's inventory purchases exceeded its reported sales, and that the taxpayer had no plausible explanation for the discrepancy. Ultimately, the auditor calculated the total sales taxes due, credited the taxpayer for the sales

10

taxes paid during the audit period, and assessed a deficiency of $155,721.24, without interest.

The Department determined that the taxpayer had fraudulently underreported and underpaid the sales taxes that it had collected during the audit period, so it assessed an additional 50% penalty for fraud on the amount of the total sales tax-liability. The Tax Tribunal upheld that determination, finding that the taxpayer had not maintained proper records, that it had vastly underreported its taxable sales, that it had done so every month during the 66-month audit period, and that the taxpayer had not provided any plausible explanation for its recordkeeping and reporting practices. The Tax Tribunal essentially concluded that the taxpayer had engaged in this scheme for the purpose of evading the payment of the appropriate amount of sales tax.

Rule 56(c)(1), Ala. R. Civ. P., provides, in pertinent part: "If the opposing party contends that material facts are in dispute, that party shall file and serve a statement in opposition supported in the same manner as is provided herein for a summary of undisputed material facts." The taxpayer did not file and serve a statement of facts opposing

11

the statement filed by the Department.  However, throughout its brief in response to the motion for a summary judgment, the taxpayer set forth additional facts, which it supported with affidavits and exhibits, substantially complying with Rule 56(c)(1).  See Kennedy v. Wells Fargo Home Mortg., 853 So. 2d 1009, 1011-12 (Ala. Civ. App. 2003).  The taxpayer also relied on excerpts from the certified record of the testimony presented at the hearing before the Tax Tribunal, which had been submitted to the trial court pursuant to § 40-2B-2(m)(4) ("The administrative record and transcript shall be transmitted to the reviewing court as provided herein and shall be admitted into evidence in the trial de novo, subject to the rights of either party to object to any testimony or evidence in the administrative record or transcript.").

The Department's auditor testified at the hearing before the Tax Tribunal that the Department follows the guidelines of the federal Internal Revenue Service ("IRS") when performing a markup audit.  The IRS annually calculates a standard markup percentage for various retail businesses based on nationwide data.  The Department regularly uses a standard IRS markup percentage of 35% when conducting its markup

audits. The auditor admitted that the Department had not promulgated any rule, regulation, or guideline adopting the standard IRS 35% markup percentage. The auditor further testified that he had used the standard IRS 35% markup percentage because his supervisor had instructed him to do so. The auditor stated that he did not perform any independent calculation, investigation, or analysis to ascertain whether the 35% markup percentage should be applied in the taxpayer's audit.

In one of the affidavits submitted by the taxpayer, J. Alan Taunton, a certified public accountant, stated that he was familiar with the Department's practice of using a "standard mark up of [35%] in its sales tax audits of retail businesses." Taunton opined that the Department's practice "is not the best methodology to calculate the correct tax or value for sales tax purposes for convenience stores." Taunton stated that "the most accurate and complete information reasonably obtainable for purposes of a markup can be derived from what is commonly called a shelf audit or classified markup." Taunton explained that,

> "[i]n performing a shelf audit, the auditor actually goes to the convenience store and performs an actual physical examination of various items/products being sold at the store.

13

> Selections for examination are made after first stratifying the population of the items sold. This [e]nsures that the selections accurately represent the entire population."

According to Taunton, "[t]he auditor [then] physically views the sales price that is being charged for various items in the selected sample" and "then examines current pertinent invoices to determine the wholesale purchase in proportion to the sales of the product using weighted averages for major categories of products being sold [which] is designed to determine the average cost percentage for each stratified group."

The auditor testified that he had not performed a shelf audit and, in fact, that he had never visited the convenience store owned and operated by the taxpayer. The auditor conceded that a shelf audit could have produced a different markup percentage, as low as even 4%, far less than the standard IRS 35% markup percentage that he had been ordered to apply by his supervisor. Hoque testified in the hearing before the Tax Tribunal that he had personally determined that the taxpayer had marked up its inventory only by an average of 12%, and he explained how he determined that figure by reviewing the retail prices of various goods sold in the store. The taxpayer pointed out in its response to the motion

14

for a summary judgment that applicable IRS guideline IRM 4.10.4.6.5.2 (May 27, 2011), concerning the use of the standard IRS 35% markup percentage, requires an auditor to accept the oral testimony of the taxpayer regarding any plausible explanation for why a taxpayer's markup percentage deviates from the 35% standard. According to the taxpayer, the Department failed to follow the IRS guidelines by ignoring Hoque's explanation. However, the Department pointed out that, in the preliminary order, the Tax Tribunal had determined that Hoque's explanation of how he had determined his 12% markup figure was incoherent.

Finally, the taxpayer attached the affidavit of Christopher J. Capell, a beer-sales representative, who stated that beer distributors control the markup percentage for sales of their products and that he had personally observed that the taxpayer had complied with the distributors' guidelines by marking up most of its beer products between 15% and 19%, except for single cans or bottles, which, he said, were sold at a 20% markup.

15

In the last part of its response, the taxpayer challenged the fraud finding made by the Tax Tribunal. The taxpayer acknowledged that it had not maintained the "z tapes" and that its recordkeeping practices were not ideal, but it noted that the Department had not promulgated any regulation requiring that the taxpayer retain the "z tapes." The taxpayer also noted that the Tax Tribunal had based its finding of fraud, in part, on the conclusion of the markup audit that the taxpayer had transacted sales far exceeding its reported sales, which, the taxpayer said, had been derived from the use of unauthenticated vendor documents and the IRS standard 35% markup. The taxpayer argued that the finding of fraud could not be inferred from the difference in the estimated sales-tax liability based on what it described as the improper markup audit and the sales taxes that it had actually paid.

Law & Analysis

Section 40-2B-2(m)(4), Ala. Code 1975, provides, in pertinent part: "The appeal to circuit court from a final or other appealable order issued by the Alabama Tax Tribunal shall be a trial de novo, except that the order shall be presumed prima facie correct and the burden shall be on

16

the appealing party to prove otherwise." That Code section establishes a rebuttable presumption that the final order entered by the Tax Tribunal is correct. See Rule 301, Ala. R. Evid. To rebut that presumption, the burden rests on the appealing party "to prove otherwise." In the context of an appeal of a final order of the Tax Tribunal upholding a final assessment, the appealing party must prove that the final assessment is incorrect, contrary to the determination of the Tax Tribunal.

In this case, the Department moved for a summary judgment on the ground that the taxpayer could not present any admissible evidence to prove that the Tax Tribunal had incorrectly upheld the final assessment. The Department attached to its motion the preliminary and final orders of the Tax Tribunal and argued that the Tax Tribunal had correctly determined the facts and the law and had properly applied the law to the facts. Because the final order is "presumed prima facie correct," the Department discharged its burden of presenting evidence that, if uncontroverted, would have entitled it to a judgment affirming the order. See Ex parte General Motors Corp., supra.

17

The taxpayer countered the Department's evidence with evidence contradicting the determination of the Tax Tribunal that the Department had correctly estimated the taxable sales transacted by the taxpayer during the audit period. For purposes of the motion for a summary judgment, the parties agree that the taxpayer did not preserve records and information sufficient for the Department to ascertain the taxpayer's sales-tax liability. The parties also do not dispute that, when a taxpayer does not maintain adequate records to determine the sales tax owed, Ala. Code 1975, § 40-2A-7(b)(1)a. applies. Section 40-2A-7(b)(1)a. provides, in pertinent part:

> "If the department determines that the amount of any tax as reported on a return is incorrect, or if no return is filed, or if the department is required to determine value, the department may calculate the correct tax or value based on the most accurate and complete information reasonably obtainable by the department."

(Emphasis added.). In <u>84 Lumber Co. v. City of Northport</u>, 250 So. 3d 567, 573 (Ala. Civ. App. 2017), this court determined from the plain language of the statute that "[s]ection 40-2A-7(b)(1)a. requires a taxing authority that disputes the accuracy of a tax reported on a return to use

the most accurate and complete information that it can procure without extraordinary effort in order to calculate the correct tax."

In the proceedings before the Tax Tribunal, the central issue was whether the Department had complied with § 40-2A-7(b)(1)a. by using the markup-audit methodology to estimate the sales tax owed by the taxpayer during the audit period. The Tax Tribunal determined that the Department had properly estimated the sales-tax liability using that methodology, which was explained at length during the testimony of the auditor. The Department asserts that, because the Tax Tribunal is an administrative agency that is subject to the Alabama Administrative Procedure Act ("the AAPA"), Ala. Code 1975, § 41-22-1, et seq., see Ala. Code 1975, § 40-2B-2(a), (b), and (q), the trial court was required to defer to those findings in accordance with the standard of review set forth in Ala. Code 1975, § 41-22-20(k), a part of the AAPA. Section 41-22-20(k) generally provides that, on judicial review of the final decision of an administrative agency, the reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact" and that the decision shall be upheld unless it is

determined to be "[c]learly erroneous" or "[u]nreasonable, arbitrary, or capricious ." See § 41-22-20(k)(6) & (7). During the oral argument on the motion for a summary judgment, the trial court alluded to that standard of review when questioning the parties regarding the effect of the factual findings of the Tax Tribunal on appeal.

However, § 41-22-20(k) expressly provides that the general standard of review of the decisions of an administrative agency governs "[e]xcept where judicial review is by trial de novo" As noted above, § 40-2B-2(m)(4) provides for judicial review of a final order of the Tax Tribunal by trial de novo. Thus, the general standard of review of the decisions of an administrative agency does not apply in an appeal of a final order of the Tax Tribunal.

In Alabama Department of Revenue v. Greenetrack, Inc., [Ms. 1200841, June 30, 2022] ___ So. 3d ___ (Ala. 2022), our supreme court explained that "a trial de novo means a new trial 'as if no trial had ever been had, and just as if it had originated in the circuit court.'" (quoting Louisville & Nashville R.R. v. Lancaster, 121 Ala. 471, 473, 25 So. 733, 735 (1899)). Section 40-2B-2(m)(4) further provides that, in a trial de

novo, "[t]he circuit court shall hear the case by its own rules and shall decide all questions of fact and law." By its plain language, the statute indicates that the circuit court shall independently decide the facts of the case. Although the final order of the Tax Tribunal is entitled to a presumption of correctness, that presumption amounts only to a procedural device shifting the burden of proof to the taxpayer, see generally Rule 301, Ala. R. Evid., and is not in any sense a directive to the circuit court that it is bound by, or even required to give any substantial deference to, the findings of fact made by the Tax Tribunal, which would be inconsistent with the meaning of a trial de novo.

Because the trial court was reviewing the case de novo, it had to determine for itself whether the final assessment was incorrect based on the evidence before it. In the context of the motion for a summary judgment, the pertinent question was whether the taxpayer had presented substantial evidence in its submission to the trial court to warrant a trial. See Bass, supra. In deciding that question, the trial court was guided solely by the summary-judgment standard by which evidence is "substantial" enough to create a genuine issue of material fact

to defeat a motion for a summary judgment if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989). The question was not whether the factual determinations made by the Tax Tribunal had been adequately supported by the evidence before that agency so that they should be given preclusive effect on appeal. Moreover, because the judicial review was by trial de novo, the taxpayer was allowed to present new evidence not considered by the Tax Tribunal, which it did by submitting affidavits and exhibits not contained in the administrative record. See Greenetrack, supra. The trial de novo review required the trial court to consider that evidence when ruling on whether the taxpayer had sufficiently proven a genuine issue of material fact.[1] Therefore, the factual findings of the Tax Tribunal, which were made without consideration of that evidence, could not be binding on the

[1]Pursuant to § 40-2B-2(m)(4), the parties may consent to limit the judicial review to the administrative record and transcript, but the parties in this case did not agree to that limitation.

trial court. To the extent that the trial court indicated otherwise, it was in error.

On our de novo review of the motion for a summary judgment, we conclude that the taxpayer presented substantial evidence creating a genuine issue of fact as to whether the final assessment was correct. In his affidavit, Taunton attested that the markup audit was not the most accurate and complete method of determining the taxpayer's sales-tax liability. Taunton stated that a shelf audit, or classified markup audit, pursuant to which the auditor would have inspected the taxpayer's convenience store to ascertain the actual retail prices of the merchandise, would have provided the Department with the most precise markup percentage to be applied when making its estimate. The evidence submitted by the taxpayer indicates that the auditor was familiar with a shelf audit, that the Department could have performed a shelf audit, that, in its publications, the Department acknowledges that a shelf audit is a more defensible method of ascertaining the specific markup percentage for a specific taxpayer, and that the shelf audit could have produced a drastically lower markup percentage. However, the auditor

testified that he had never visited the convenience store owned and operated by the taxpayer to conduct a shelf audit because he had been instructed by his supervisor to apply the standard IRS 35% markup.

The IRS guidelines, which the Department ordinarily follows, indicate that a standard markup audit would not be as accurate as a shelf audit and that the standard 35% markup should not be used when the taxpayer presents a plausible argument to support a deviation. Capell stated in his affidavit that the taxpayer had marked up its beer products, which constituted a large percentage of its sales, only between 15% and 20%. Hoque testified that, overall, the taxpayer marked up their prices an average of only approximately 12%. The Tax Tribunal found that Hoque's testimony lacked credibility, but the trial court could have found otherwise in a trial de novo based on its own assessment of the witness. "[A] court may not determine the credibility of witnesses on a motion for summary judgment." Phillips v. Wayne's Pest Control Co., 623 So. 2d 1099, 1102 (Ala. 1993).

We conclude that the taxpayer presented a genuine issue of material fact regarding whether the Department relied on the most

24

accurate and most complete information reasonably obtainable when making its estimation of the taxpayer's taxable sales and whether the amount of the final assessment was properly estimated. Furthermore, as part of its basis for determining that the taxpayer had committed fraud, the Tax Tribunal relied heavily on the large discrepancy between the estimated taxable sales as determined by the Department using the markup-audit methodology and the taxable sales reported by the taxpayer on its sales tax returns. Because the taxpayer has presented a genuine issue of material fact as to whether the Department properly estimated the taxable sales, the taxpayer has likewise presented a genuine issue of material fact as to whether the finding of fraud made by the Tax Tribunal is correct.

## Conclusion

Because we find that the taxpayer presented substantial evidence establishing a genuine issue of material fact, we pretermit discussion of any other arguments for reversal of the summary judgment made by the taxpayer in its brief. We reverse the judgment of the trial court and remand the cause with instructions that the trial court vacate the

summary judgment and that it take such other actions that are consistent with this opinion to conclude this matter in accordance with the procedure set forth in § 40-2B-2(m)(4).

REVERSED AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Hanson and Fridy, JJ., concur.

Edwards, J., concurs in the result, without opinion.